**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 22, 2013**

# In the Court of Appeals of Georgia

A13A1484, A13A1485, A13A1486, A13A2131. IN RE ESTATE OF RUTH SWANN HUBERT (four cases).

MCFADDEN, Judge.

These cases, which we have consolidated for appeal, involve a dispute between four siblings who are co-executors of their mother's estate. The parties dispute how to achieve the intent of their mother, Ruth Swann Hubert ("Mrs. Hubert"), to equalize estate assets among them. Judith Hubert Manning brought a petition in probate court against Richard Hubert, Marilyn Hubert Kemper, and Deborah Hubert to enforce a mediated settlement agreement regarding the distribution of the estate. Richard Hubert, Marilyn Kemper, and Deborah Hubert counterclaimed for, inter alia, breach of fiduciary duty against Judith Manning. After a bench trial, the probate court entered an order of judgment in which she set forth

how the estate was to be distributed, found that Judith Manning had not breached her fiduciary duty, ordered all of the siblings removed as co-executors, and ordered Richard Hubert and Deborah Hubert to pay attorney fees to Judith Manning. Richard Hubert, Marilyn Kemper, and Deborah Hubert appealed in Cases No. A13A1484, A13A1485 and A13A1486, respectively, and the probate court ordered them each to post a bond pursuant to OCGA § 53-7-55, which allows a probate court, upon good cause, to require additional security from the personal representative of an estate.

Richard Hubert, Marilyn Kemper, and Deborah Hubert argue that, in ruling on how the estate assets should be distributed among the parties, the probate court improperly modified the terms of the settlement agreement in her order. We agree, because the unambiguous terms of the settlement agreement require an accountant to complete certain determinations before the equalization of the estate assets can be calculated, and it is undisputed that the accountant has not yet completed those determinations. Accordingly, we reverse that part of the probate court's order regarding the distribution of estate assets and remand the case for proceedings not inconsistent with this opinion. In light of this ruling, we also reverse the award of attorney fees against Richard Hubert and Deborah Hubert.

2

In addition, Richard Hubert challenges the probate court's ruling that Judith Manning did not breach her fiduciary duty. He challenges the probate court's admission of the testimony of Judith Manning's husband on the value of certain real property that the husband owned. He challenges the probate court's denial, as untimely, of his motion to recuse. And Marilyn Kemper and Deborah Hubert challenge their removal as co-executors. We find no error in any of these rulings, and we affirm them.

Because we affirm the dismissal of the parties as co-executors of the estate, Richard Hubert's appeal from the bond order in Case No. A13A2131 is moot.

Accordingly, as detailed below, we affirm in part and reverse in part the probate court's order in Cases No. A13A1484, A13A1485 and A13A1486, and remand those cases with direction, and we dismiss as moot the appeal in Case No. A13A2131.

1. *Facts and procedural posture.*

The parties' father, O. C. Hubert, died in 1986, leaving a substantial estate. Litigation over the estate ensued, resulting in a settlement agreement that, among other things, placed four pieces of real property into four qualified terminable interest property trusts (the QTIPs). See IRC § 2056 (b) (7). Each QTIP held the real property

in trust for one of the four Hubert children, who served as trustee for that QTIP, and each QTIP designated Mrs. Hubert as the income beneficiary for her life. Under the settlement, Mrs. Hubert had general power of appointment over a trust containing other assets. See IRC § 2056 (b) (5). She placed some of those assets into three trusts (the GPA trusts) that she then contributed into the QTIPs associated with Richard Hubert, Marilyn Kemper, and Deborah Hubert, to equalize their asset value with that of Judith Manning's QTIP, which contained more valuable real property.

As part of Mrs. Hubert's estate planning, the QTIP assets were contributed to limited partnerships affiliated with the Hubert family, giving the QTIPs ownership interests in the limited partnerships. This reduced the marketability of the QTIP assets, discounting their value for estate tax purposes. Initially, Richard Hubert, Marilyn Kemper, and Deborah Hubert each contributed the real estate in their QTIPs to Hubert Properties, LLLP. Subsequently, they contributed their ownership interests in Hubert Properties to Hubert Consolidated, LLLP. Judith Manning contributed the real estate in her QTIP to Manning Family Investments, LLLP.

Mrs. Hubert died in 2006, and the four Hubert children were named co-executors of her will. Her will pertinently expressed her intent "to equalize among [her] four children (and their respective lineal descendants) the bequests made by

4

[her] deceased Husband pursuant to (1) his Last Will and Testament . . . , (2) the Settlement Agreement [pertaining to her husband's estate], and (3) any gifts or other bequests [she] may have made during [her] lifetime[.]" The parties disputed how to accomplish this goal. A mediation facilitated by Judge Marion Pope on that issue led to the 2010 settlement agreement that is the subject of this case.

The 2010 settlement agreement designated an accountant to review the books and records of specified Hubert-related entities (including Hubert Properties, Hubert Consolidated, and Manning Family Investments) and to make certain determinations about the fair market value of assets and liabilities contributed to those entities. The accountant produced a draft report, aspects of which the parties disputed. The accountant also identified open issues about which he needed more information or had unanswered questions.

Judith Manning then filed a petition in the probate court seeking to enforce the 2010 settlement agreement. Richard Hubert, Marilyn Kemper, and Deborah Hubert counterclaimed for, inter alia, breach of fiduciary duty, essentially alleging that Judith Manning personally benefitted from the assets in her QTIP at Mrs. Hubert's expense. The probate judge voluntarily recused, and the Honorable Adele Grubbs of the

Superior Court of Cobb County, who was presiding over a related superior court matter, was designated to sit as the probate court in this case.

After a bench trial, the probate court entered an order holding that "[e]ach of the four children should receive $4,132,302 to equalize the estate." This meant that Marilyn Kemper and Deborah Hubert would pay certain amounts to the estate, and the estate would pay certain amounts to Judith Manning and Richard Hubert. The probate court found no evidence to support the counterclaim for breach of fiduciary duty. The probate court ordered all four children removed as executors and appointed a new executor. And the court ordered Richard Hubert and Deborah Hubert to pay $60,000 in attorney fees to Judith Manning under OCGA § 13-6-11 for stubborn litigiousness. The probate court denied motions filed by Richard Hubert and Deborah Hubert for, alternatively, a new trial or an amendment of its findings of fact and conclusions of law. Richard Hubert, Marilyn Kemper and Deborah Hubert appealed, and the probate court ordered that each of them post a $5,000,000 bond pursuant to OCGA § 53-7-55.

2. *Enforcement of the settlement agreement.*

"A trial court's order on a motion to enforce a settlement agreement based on undisputed facts is subject to de novo review." *Anaya v. Coello*, 279 Ga. App. 578,

6

579 (632 SE2d 425) (2006) (citations omitted). But if the trial court made factual findings in deciding a motion to enforce a settlement agreement, we will uphold those findings if there is any evidence to support them. *In re Estate of Huff*, 287 Ga. App. 614, 615 (652 SE2d 203) (2007).

The unambiguous terms of a settlement agreement must be strictly enforced and cannot be modified by the trial court. *Scherer v. Testino*, 291 Ga. 75, 77 (1) (727 SE2d 490) (2012); see *King Cotton v. Powers*, 200 Ga. App. 549, 550 (2) (409 SE2d 67) (1991) ("It is the duty of the courts to construe and enforce contracts as made, and not to make them for the parties.") (citation, punctuation and emphasis omitted). Richard Hubert, Marilyn Kemper, and Deborah Hubert argue that the probate court improperly modified the settlement agreement in several respects.

First, they argue that the probate court improperly decided the final issue of how the estate was to be equalized, rather than merely resolving the disputed or open items arising from the accountant's draft report and then allowing the accountant to complete his work. As detailed below, we agree that the procedures established by unambiguous language of the settlement agreement do not permit equalization until after the accountant's identified issues are resolved and the accountant issues his final report. Consequently, the case must be remanded for these steps to occur.

7

Second, they argue that the probate court improperly construed a provision of the settlement agreement requiring the removal of all discounts when valuing those assets to determine equalization. They argue that this requirement does not apply to what they refer to as "intermediate discounts" that arose when they contributed their interests in Hubert Properties into Hubert Consolidated. As detailed below, we find that whether the "intermediate discounts" are the type of discounts that must be removed under the settlement agreement is a factual question appropriate for the probate court's resolution on remand.

Third, they argue that the probate court improperly construed the settlement agreement to impose interest upon certain payments that the estate had made to Richard Hubert, Marilyn Kemper, and Deborah Hubert, when those payments were taken into account in the equalization calculation. As detailed below, we agree that the settlement agreement does not provide for such imposition of interest.

(a) *Procedures for determining equalization.*

Paragraph 1 of the settlement agreement provides, among other things, that "[t]he Executors of the Estate shall engage the firm of Frazier & Deeter, LLC, a qualified independent certified public account firm (the 'Accountant') for the limited purpose of examining the books and records of [the specified Hubert-related entities]

8

(the 'Entities').'' The settlement agreement sets forth the scope of the accountant's examination, which is to include certain determinations, made in accordance with Generally Accepted Accounting Principles and the entities' limited partnership agreements, regarding: the formation of the entities; the fair market value of assets contributed to the entities; each trust's percentage interest in the entities; other transactions affecting equity interests in the entities; and, pertinently,

> the determination of the assets and liability of each of the Entities for purposes of the valuation thereof as of the date of death of Mrs. Ruth S. Hubert (but not any review or critique of the valuation methodology employed by the appraisers engaged for the Estate for federal estate tax purposes unless specifically otherwise authorized by the parties).

The settlement agreement requires the entities to make available to the accountant certain books and records, along with "such other materials as the Accountant may request in order to enable him to provide the opinion sought." The settlement agreement then provides:

> If any disagreement arises among the parties regarding the Accountant's treatment of any items within an Entity, or any other issues which the Accountant identifies as being relevant to the inquiry, and if that disagreement cannot be resolved among the Parties, the Parties will submit the matter for final determination to Judge Marion Pope for determination so long as he is required to make such determination in

9

conformity with the law governing the partnerships and generally accepted accounting principles and in accordance with the Limited Partnership Agreement of each entity.

The settlement agreement further provides that, "[o]nce all such issues are identified and resolved, the Parties will make any such adjustments, if any, necessary to properly account for the equity interests of each participant in each Entity and the valuation thereof."

Paragraph 2 of the settlement agreement provides that "*[a]fter the examination in Number 1 above is complete* the Parties shall recompute the allocation of all assets among Deborah, Richard, Judith, and Marilyn (the 'Children') upon the death of Mrs. Hubert, including the net asset value passing to each of them from and through the respective QTIP trusts, GPA trusts, and the Estate." (Emphasis supplied.) It provides details about how the parties will perform this computation (including the removal of discounts, discussed infra), and it states that this computation "shall implement the provisions of Mrs. Hubert's Last Will and Testament in the manner reflected in [an exhibit attached to the settlement agreement]." The settlement agreement then imposes the costs of administration expenses and taxes equally upon each of the four Hubert sibling's shares, at which point, according to the settlement agreement, "the

10

Estate has been equalized." The referenced exhibit provides a model for the equalization computation.

Thus, the unambiguous language of the settlement agreement sets forth a two-step process for equalizing the estate among the four Hubert siblings. In the first step, the accountant is to make certain determinations, and any disputes among the parties regarding those determinations, or any open questions raised by the accountant, shall be resolved. Then, in the second step, the parties are to use the accountant's determinations to reallocate the estate assets among them according to specific parameters.

At trial, the accountant testified that he had not completed the work called for in Paragraph 1 of the settlement agreement because of outstanding questions and other disputed issues. The parties apparently agreed that the probate court, in lieu of Judge Pope, could resolve the open issues identified by the accountant. Richard Hubert, Marilyn Kemper, and Deborah Hubert put into evidence an exhibit compiled by the accountant that reflected those issues, and in his appellate brief, Richard Hubert summarizes the open issues as:

(1) [R]emoval of the allocation of a portion of the estimated estate tax liability of O. C. Hubert;

11

(2) Adjustments based on an over-distribution to Mrs. Hubert by Hubert Properties during the first [eight] years after its formation . . . ;

(3) Direction as to whether [the accountant's] assumption is correct in his adjusted percentages of assets from [another of the Hubert-related entities] . . . ;

(4) Direction as to how to handle the fact that [Manning Family Investment's] values placed on properties other than [Judith Manning's] QTIP . . . at the date of contribution were determined by Aymar Manning without documentation; and

(5) The need for additional support for distributions made to Mrs. Hubert.

(Citations omitted.)

Instead of addressing the open issues identified by the accountant and then returning the matter to the accountant, however, the probate court performed the final equalization calculation called for in Paragraph 2. This approach did not comply with the procedure established by the unambiguous terms of the settlement agreement.

Judith Manning argues that the parties stipulated to this approach during a proceeding in their related case before Judge Grubbs in the superior court. Those proceedings are properly before us because, at the trial in this case, Judith Manning's

12

counsel read into the record the relevant excerpts of the transcript of the superior court proceeding. But those excerpts do not support her argument. They show merely a representation by her counsel that the parties had agreed for the probate court to try "every . . . dispute that exists between these parties," aside from a dispute concerning Judith Manning's ownership in a Hubert-related entity that had been raised in the proceedings in this case but also was the subject of the related superior court case. This reference appears to concern the parties' agreement to remove that additional dispute from the matters before the probate court. In any event, the language to which Judith Manning points does not authorize the probate court to substitute a different mechanism for distributing the estate from that set forth in the parties' settlement agreement. And, contrary to Judith Manning's assertion of a stipulation, Richard Hubert, Marilyn Kemper, and Deborah Hubert continued to argue throughout the probate court proceedings that, to enforce the settlement agreement, the probate court must return the matter to the accountant after resolving the open issues in accordance with Paragraph 1.

The probate court's desire to bring an end to this protracted litigation between family members is understandable. In enforcing the parties' settlement agreement, however, the probate court was bound to follow the procedures to which the parties

agreed, inefficient though they might be. The probate court diverged from those procedures when she declined to decide the accountant's open issues and then send the matter back to him to complete the work called for in Paragraph 1, but instead proceeded to make the Paragraph 2 equalization calculation. Accordingly, we must reverse that portion of the probate court's order and remand the case for the probate court to enforce the procedures set forth in the settlement agreement, as written, and for other proceedings not inconsistent with this opinion.

(b) *Treatment of discounts.*

One of the accountant's unresolved questions concerned the treatment of discounts in valuing the estate assets. The parties' dispute on this issue turns on whether the settlement agreement requires the valuation of the estate assets to be adjusted to remove what Richard Hubert, Marilyn Kemper, and Deborah Hubert refer to in their appellate briefs as "intermediate discounts" – discounts that were applied when they contributed the interests in Hubert Properties to Hubert Consolidated. We address this issue because it is likely to recur on remand.

Paragraph 2 of the settlement agreement pertinently provides that

the Parties shall recompute the allocation of all assets among Deborah, Richard, Judith, and Marilyn (the "Children") upon the death of Mrs.

14

Hubert, including the net asset value passing to each of them from and through the respective QTIP trusts, GPA trusts, and the Estate. Such computation shall be implemented using fair market values of all such assets upon the date of Mrs. Hubert's death, as finally determined for purposes of the Federal Estate Tax liability of her estate, adjusted to remove the impact of any valuation discounts or adjustments applied by the appraisers to account for lack of marketability, lack of control, or restricted transferability of any such asset for federal estate tax purposes, and adjusted to reflect any changes required to correct any errors identified by the Accountant resulting from the Accountant's review pursuant to paragraph 1 above.

Although convoluted, the language in this paragraph is unambiguous. It provides that the parties are to recompute the net value of the assets they have received from or through the QTIPs, GPA trusts and estate. They will use in this computation the fair market value of the assets at the time of Mrs. Hubert's death. That fair market value will be adjusted to remove any discounts applied by appraisers to account (for estate tax purposes) for the assets' lack of marketability, control or transferability.

The probate court held simply that "the Settlement Agreement says there should be *no* discounts." (Emphasis supplied.) But as the above recitation of the settlement agreement's language demonstrates, the settlement agreement requires the removal of discounts under specific circumstances, namely when those discounts

15

were applied by appraisers to account (for estate tax purposes) for the assets' lack of marketability, control or transferability. The relevant question in this case is whether those circumstances existed as to the "intermediate discounts." The "intermediate discounts" arose when, prior to Mrs. Hubert's death, Richard Hubert, Marilyn Kemper, and Deborah Hubert contributed their QTIP interests in one limited partnership to another limited partnership. So the question is whether those "intermediate discounts" were applied by appraisers to account (for estate tax purposes) for the lack of marketability, control or transferability of the assets that ultimately passed to the Hubert children at the time of Mrs. Hubert's death. If the answer is yes, then the settlement agreement requires their removal. If the answer is no, then it does not require their removal. This is a question of fact that the probate court appears not to have considered, in light of her conclusion that the settlement agreement allows "no discounts." Accordingly, this question is appropriate for the probate court, as factfinder, to address on remand when resolving the open issues presented by the accountant.

(c) *Imposition of interest.*

The settlement agreement provides that certain payments that the estate had made to Richard Hubert, Marilyn Kemper, and Deborah Hubert must be taken into

16

account in the equalization calculation. The probate court held that the equalization calculation also must take into account interest on these payments. Richard Hubert, Marilyn Kemper, and Deborah Hubert argue that the settlement agreement does not authorize such imposition of interest. As this is a question of contract interpretation that may affect the proceedings on remand, we address it here.

The settlement agreement pertinently provides:

The equalization of the Estate shall be computed based on the assets of the Estate at the date of Mrs. Hubert's death, and shall take into account the payments made to three of the Children in the aggregate amount of $750,000.00, each, and shall take account of any overpayment by Judith Manning, on behalf of [Manning Family Investments], to the Estate of $27,129.00 (plus accrued interest at the judgment rate from day of payment).

(Punctuation omitted.) Any ambiguity in this sentence concerning the imposition of interest can be resolved by looking at the sentence's structure, which reflects that the interest is to be imposed upon Judith Manning's overpayment to the estate (the clause of the sentence to which the interest requirement is appended), and not upon the estate's payments to Richard Hubert, Marilyn Kemper, and Deborah Hubert (which are addressed in a separate clause). See OCGA § 13-2-2 (6) (rules of grammatical construction usually govern in construing contracts).

17

3. *Motions to amend and motions for new trial.*

Marilyn Kemper and Deborah Hubert challenge the probate court's denial of their motions to amend the findings of fact and conclusions of law and for new trial. In light of our decision reversing that portion of the probate court's order pertaining to the enforcement of the settlement agreement, and remanding the cases for further proceedings, these claims of error are moot.

4. *Attorney fees.*

The probate court ordered Richard Hubert and Deborah Hubert to pay attorney fees to Judith Manning on the ground that they had been stubbornly litigious for "refusing to accept that to which they had agreed in the Settlement Agreement." The probate court criticized the position taken by Richard Hubert and Deborah Hubert that the settlement agreement did not require the removal of the "intermediate discounts" in the equalization calculation. Nevertheless, there is a bona fide controversy on the point. Indeed, in Division 2 (b), supra, we reverse the probate court on that point. "[I]f there is a bona fide controversy there can be no stubborn litigiousness as a matter of law." *Trust Co. Bank of Augusta, N. A. v. Henderson*, 185 Ga. App. 367, 372 (4) (364 SE2d 289) (1987) (citation omitted); see also *Milam v. Attaway*, 195 Ga. App. 496, 498 (2) (393 SE2d 753) (1990). In light of our conclusions in Division 2, supra,

18

regarding the enforcement of the settlement agreement, the award cannot stand, and we reverse it.

5. *Counterclaim for breach of fiduciary duty.*

The probate court found that Richard Hubert, Marilyn Kemper, and Deobrah Hubert failed to prove their counterclaim that Judith Manning breached fiduciary duties imposed upon her as a trustee of one of the QTIPs and as a co-executor of the mother's estate. Alternatively, the probate court found that the terms of the settlement agreement precluded the counterclaim against Judith Manning. Richard Hubert challenges this ruling on appeal.

"It is well settled that a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Jonas v. Jonas*, 280 Ga. App. 155, 160 (3) (b) (633 SE2d 544) (2006) (citation and punctuation omitted). Richard Hubert argues that Judith Manning breached her fiduciary duties by personally profiting from the trust estate through an ownership interest in Manning Family Investments while failing to pay Mrs. Hubert the income to which she was entitled from Judith Manning's QTIP. See *Hasty v. Castleberry*, __ Ga. __, __ (4) (__ SE2d __) (Case No. S13A0989, decided Oct. 7, 2013) ("Generally, it is not permitted for a fiduciary to be

19

in a position where his interests might conflict with that of a beneficiary and a trustee shall administer the trust solely in the interests of the beneficiaries.") (citations and punctuation omitted). But as Judith Manning points out, evidence was presented at trial that Manning Family Investments paid Mrs. Hubert more than what was required by the terms of the trust. This evidence authorized the probate court's ruling. See generally *Ludwig v. Ludwig*, 281 Ga. 724, 726 (4) (642 SE2d 638) (2007) (where record established that plaintiffs were not damaged by trustees' alleged breaches of fiduciary duty, trustees were entitled to summary judgment despite evidence "that [they] ha[d] not perfectly performed all of their administrative obligations under the trust and that they improperly expended trust assets").

6. *Admission of opinion testimony.*

Richard Hubert argues that the probate court erred in allowing Judith Manning's husband, Aymar Manning, to testify to his opinion about the value of real property that had been contributed to Manning Family Investments. We consider this issue because it is likely to recur on remand.

Pretermitting whether Aymar Manning (a credentialed real estate appraiser ) could testify as an expert in this case, the probate court held that he could give lay opinion testimony on the properties' values based on his ownership interest in the

property. Under former OCGA § 24-9-66, which was in effect at the time of the trial, "[d]irect testimony as to market value is in the nature of opinion evidence. One need not be an expert or dealer in the article in question but may testify to its value if he has had an opportunity for forming a correct opinion." (A similar rule is found in Georgia's new evidence code at OCGA § 24-7-701 (b).) Aymar Manning testified that he was familiar with the properties at issue, in which he had an ownership interest, and that he also was familiar with comparable properties, which he had considered in reaching his opinion. His testimony provided a sufficient foundation for the probate court to consider his opinion as to the properties' market values under former OCGA § 24-9-66. See *Beale v. O'Shea*, 319 Ga. App. 1, 6-7 (1) (735 SE2d 29) (2012). Accordingly, it is not error to admit that testimony to the extent it is relevant to the issues to be decided by the probate court on remand (the open issues that must be resolved before the accountant can complete his work under the settlement agreement).

7. *Motion to recuse.*

Richard Hubert challenges the probate court's denial of his motion to recuse the superior court judge who was designated to sit as the probate court in this case. The record shows that on September 17, 2012, Richard Hubert sent the probate court

21

a letter in which he requested the judge to recuse herself, primarily due to the manner in which she had conducted this and related proceedings. But he did not move to recuse until the morning of trial, September 24, 2012. The probate court denied the motion as untimely under Uniform Superior Court Rule 25.1, which requires that a motion to recuse be filed "not later than ten (10) days prior to the hearing or trial which is the subject of recusal or disqualification, unless good cause be shown for failure to meet such time requirement" and further provides that "[i]n no event shall the motion be allowed to delay the trial or proceeding." Uniform Probate Court Rule 6.10 (A) contains identical language.

From the record, there is no question that Richard Hubert failed to meet this timeliness requirement, and he has cited to no authority to support his argument that the probate court was required to recuse herself despite the untimeliness of the motion. We find no error.

8. *Removal of executors.*

The probate court removed all four siblings as co-executors, finding that "[t]here is eminent distrust on both sides and the situation is untenable." There was evidence to support this finding, and the decision to remove the parties as co-executors fell within the probate court's discretion under OCGA § 53-7-55 to remove

22

an executor for "good cause." See generally *Benefield v. Martin*, 276 Ga. App. 130, 132 (622 SE2d 469) (2005) (the "probate court can order an accounting, remove executors or require they post additional security, or issue such other order as in the probate court's judgment is appropriate under the circumstances of the case" to address issues pertaining to the performance of executors) (citations and punctuation omitted); *In re Estate of Zeigler*, 273 Ga. App. 269, 270 (1) (614 SE2d 799) (2005) ("The relevant question in reviewing a removal order is whether the trial court had grounds to conclude that there was 'good cause' for removal.") (citation omitted).

9. *Bond order.*

Richard Hubert appeals from the probate court's order requiring him to post a bond under OCGA § 53-7-55. That Code section permits a probate court, in its discretion and upon a finding of good cause, to "[r]equire additional security" from an executor. OCGA § 53-7-55 (2). As we have affirmed on appeal the probate court's decision to remove Richard Hubert as executor, the matter of the bond is now moot. See *Ruskin v. AAF-McQuay*, 284 Ga. App. 49, 53 (643 SE2d 333) (2007).

*Judgment in Cases No. A13A1484, A13A1485 and A13A1486 affirmed in part, reversed in part, and cases remanded with direction. Appeal in Case No. A13A2131 dismissed as moot. Doyle, P. J., and Boggs, J., concur.*

23