**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**September 29, 2014**

# In the Court of Appeals of Georgia

A14A0875; A14A0876. MAREE et al. v. ROMAR JOINT VENTURE; and vice versa.

MCMILLIAN, Judge.

ROMAR Joint Venture ("ROMAR"), by and through Bank of America, N.A. ("BOA") as the managing joint venturer of ROMAR, filed a petition in 2010 seeking to dissolve ROMAR on the grounds that management was deadlocked. One of the joint venturers, Margaret Brewster Maree, and her co-trustee J. Clifton Barlow, Jr.[1] objected to dissolution and asserted various counterclaims against BOA. In Case No. A14A0875, the Maree Parties appeal the trial court's grant of dissolution, the dismissal of their counterclaim for conversion, and denial of summary judgment on their claim that BOA breached the contract by using ROMAR funds to pay its

---

[1] We will hereinafter refer to Margaret Brewster Maree individually as "Maree" and Maree and J. Clifton Barlow, Jr. collectively as the "Maree Parties."

litigation expenses. In Case No. A14A0876, BOA cross-appeals the trial court's denial of its motion for summary judgment on the Maree Parties' remaining counterclaims and its request that ROMAR pay its litigation fees. For the reasons set forth below, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). To prevail on a motion for summary judgment,

> the moving party must show that there is no genuine dispute as to a specific material fact and that this specific fact is enough, regardless of any other facts in the case, to entitle the moving party to judgment as a matter of law. When a defendant moves for summary judgment as to an element of the case for which the plaintiff, and not the defendant, will bear the burden of proof at trial, the defendant may show that he is entitled to summary judgment either by affirmatively disproving that element of the case or by pointing to an absence of evidence in the record by which the plaintiff might carry the burden to prove that element. And if the defendant does so, the plaintiff cannot rest on his pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citation and punctuation omitted.) *Beale v. O'Shea*, 319 Ga. App. 1, 2 (735 SE2d 29) (2012). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Gwinnett Community Bank v. Arlington Capital, LLC*, 326 Ga. App. 710, 710 (757 SE2d 239) (2014). Because this opinion addresses cross-motions for summary judgment, we will construe the facts in favor of the non-moving party as appropriate.

With these principles in mind, the record shows that ROMAR was established in 1971 through a joint venture agreement (the "Agreement") by two friends who purchased property where I-75 was to be built. Over the intervening years, their 50/50 ownership of ROMAR passed to their various relatives and their trusts. ROMAR currently consists of seven joint venturers: the Owenby Trust (40.448% interest); Margaret Brewster Maree, individually (10% interest); the Maree Trust[2] (16.515% interest); George LaVance Maree, Jr. ("Vance"),[3] individually (10% interest); the

---

[2] The trust created under Para. 8 (d) of the G. LaVance Maree Trust u/a 1/5/73 benefitting Margaret Brewster is referred to as the "Maree Trust." J. Clifton Barlow and Margaret Maree are co-trustees of the Maree Trust.

[3] Margaret and Vance Maree are brother and sister.

Vance Trust[4] ("Vance Trust") (16.515% interest); Mary Ansley Southerland (3.261%); and Robert Frank Meaders, Jr. (3.261% interest).[5]

BOA itself is not a joint venturer. Rather, in its capacity as trustee of the Owenby Trust – the joint venturer with the largest interest in ROMAR – BOA is the managing joint venturer of ROMAR (the "Manager"). The Agreement, which requires unanimous consent to amend, governs the responsibilities and duties of BOA as the Manager. Specifically, the Agreement provides that

> [BOA is appointed to] carry on the business of the Joint Venture and to manage and control the business and to maintain the books and records of the Joint Venture . . . [BOA] shall have full and complete authority to make any and all ordinary or routine decision regarding the business of the Joint Venture and to implement such decisions.[6] [BOA] is hereby expressly authorized to take title to the Property or any interest of the

---

[4] The trust created under Para. 8 (d) of the G. LaVance Maree Trust u/a 1/5/73 benefitting Vance Maree is referred to as the "Vance Trust." BOA and G. LaVance Maree, Jr. are co-trustees of the Vance Trust. Vance did not respond to the Petition and is not a party to this appeal.

[5] Although Southerland and Meaders responded to the Petition filed by BOA, they filed no counterclaims and did not respond to the summary judgment motions. Neither is a party to this appeal.

[6] However, most other decisions relating to the joint venture, including the sale of property, are required to be made by a majority of the joint venturers in accordance with the percentage of their respective interests in ROMAR.

4

Joint Venture in the Property in [its] own name as nominee and to convey, sell, transfer, mortgage, lease, rent, assign or otherwise encumber and convey the interest of the Joint Venture in the Property upon the written consent of a majority in interest and not in numbers of the Joint Venturers. [BOA] is authorized, expressly but without limitation, to execute warranty and quitclaim deeds, contracts, leases, assignments, deeds to secure debt, notes, settlement statements, agreements, certificates and any other writing which shall be necessary to hold, manage or convey the Property.[7]

ROMAR currently holds two pieces of real property. The first is located in DeKalb County, consisting of an 8,960 square-foot retail building currently leased to a retail store with three consecutive, five-year renewal options (the "DeKalb Property"). The second is located in Gwinnett County, consisting of a 9,468 square-foot office building that is currently leased to a company with an annually renewable lease for ten years (the "Gwinnett Property").

Under the current structure of the Agreement, BOA cannot withdraw as the Manager without unanimous, written consent to amend the Agreement. In December 2010, BOA filed its petition seeking dissolution of ROMAR on the ground that ROMAR was in deadlock. According to BOA, the deadlock, which began over ten

---

[7] The Agreement further provides that BOA is to be compensated for such managerial services out of the ROMAR funds.

5

years ago, was caused primarily by Vance Maree's lack of engagement and Margaret Maree's intentional hostility and has resulted in lost business opportunities, increased costs, decreased revenues, and lower enterprise value. In support of its arguments, BOA sets forth a long history of the parties' interactions, which we will summarize.

Maree admits that she has been "hostile" toward BOA since at least 2001, arising out of her belief that BOA failed to adequately manage her mother's estate[8] and that it failed to properly manage ROMAR. In 2001, Maree demanded that BOA resign from its role as the Manager of ROMAR. In response, BOA sought agreement from the remaining joint venturers to hire Max Holstein to serve as the new manager. All of the joint venturers agreed to this plan and gave their written consent to BOA to retain counsel to prepare an amended Agreement accordingly. A copy of the draft amended Agreement was circulated to the joint venturers in September 2001. Maree did not respond for several months, at which point she stated that she would not sign the amended Agreement because she believed that the amendment benefitted the Owenby Trust. BOA further alleges that Vance Maree had not even opened the package containing the amended Agreement when it contacted him in June 2002,

---

[8] At that time, BOA was also a co-trustee of the Maree Trust, which owned a separate piece of real estate. After nearly two years of discord, BOA was eventually replaced as the co-trustee of her trust.

6

although he indicated at that time that he would sign and return it to BOA. By February 2003, BOA had received approval from one joint venturer in 2001 and a second in late 2002. In April 2004, at the request of Faryl Moss, Maree's then co-trustee, BOA faxed a copy of the amended Agreement to Moss. Ultimately, Maree refused to sign it because she wanted to sell the properties and dissolve ROMAR.

Thereafter, in lieu of resigning, BOA sought approval from the other joint venturers to dissolve ROMAR and liquidate its assets. By October 2005, BOA had the consent of all the joint venturers except Maree, who did not provide her written consent until January 2006. BOA then sought updated appraisals for the properties, and ROMAR received a cash offer for the DeKalb County Property higher than the joint venturers' agreed-upon price. Although Maree had previously consented, she objected to the sale, and it could not go forward. Only one of the three pieces of property owned by ROMAR at that time (the "8000 Miller Court Property") was sold pursuant to the liquidation plan, which sale took place in June 2007. Then, in 2007, Maree and her co-trustee changed their minds and no longer wished to pursue dissolution and liquidation. Instead, they again demanded that BOA be replaced as the Manager.

In September 2007, a meeting was held, and the joint venturers unanimously agreed that the current Agreement and structure of ROMAR with BOA as the Manager was no longer optimal and that a new, restated Agreement should be prepared to allow for the installation of a new manager. The joint venturers again agreed that Max Holstein should serve as the new manager and that he should present a fee proposal. BOA alleges that the joint venturers also agreed at the meeting that BOA could retain counsel and pay attorney fees out of ROMAR's funds in order to prepare a new amended Agreement.[9]

The following month, BOA circulated a proposed amended Agreement; however, by December 2007, BOA did not receive a response from any joint venturer other than the Owenby Trust and Moss (as the co-trustee of the Maree Trust). In February 2008, Moss passed away, and a new co-trustee for the Maree Trust was not in place until September 2008. In October, Maree's counsel responded to BOA with a completely new version of a proposed amended Agreement. In November, BOA provided suggested changes to Maree's proposed amended Agreement but received

---

[9] Maree denied that the joint venturers approved the payment of attorney fees in her response to BOA's Statement of Material Facts in Support of Summary Judgment. But in her affidavit, Maree admits that the joint venturers agreed that the Bank could retain counsel to amend the Agreement.

no substantive response from her counsel for several months, despite BOA's repeated attempts. In March 2009, BOA learned that Maree's new co-trustee had resigned and she was seeking a replacement.

BOA called for a meeting in April 2009, but neither Margaret nor Vance Maree attended, nor did they respond indicating they would not attend, despite several communications from BOA. Because action was needed with respect to the two remaining properties' leases, at least one of their votes was necessary to reach a majority. Given Margaret and Vance Maree's absence, the leases could not be voted on. Finally, in July 2009, Maree's counsel responded to BOA by circulating copies of another version of the amended Agreement signed by Maree, her co-trustee, and Holstein. None of the other joint venturers had agreed to this version. BOA and Maree's counsel exchanged several more revisions throughout July and August. Following several prompts from BOA, Maree's counsel finally responded in October 2009 that there were delays due to a change to the co-trustee of the Maree Trust and Maree's concerns regarding certain changes to the Agreement. By November, all but one provision of the amended Agreement was agreed upon. BOA and Maree's counsel continued to discuss changes up to January 11, 2010. However, despite

9

several additional follow up inquiries from BOA, Maree's counsel never responded prior to BOA's filing of the petition in December 2010.[10]

In addition to the foregoing, BOA also alleges that Maree was hostile in her communications regarding BOA's role as Manager. Maree admits that in March 2007 she responded to BOA's request for a meeting with an e-mail stating,

> Well, is the purpose of the meeting to apologize profusely for breaching its duty on ROMAR and doing nothing over the past seven years but hold a joint venture hostage to incompetent donkeys, ruining what was a perfectly good investment for the partners?

In the same e-mail, Maree asked whether the purpose of the meeting was to "announce the wholesale removal of the list of corporate butterfingers who repeated[ly] dropped the ball on ROMAR despite numerous warnings and calls for such action to cease?" Maree also acknowledges that in July 2007 she sent a letter to US Trust Management accusing BOA of mismanagement and stating that it had

---

[10] Maree ultimately refused to sign the amended Agreement because BOA "might" be seeking a release and indemnification but was unable to point to any such language within the proposed Agreement. Maree deposed that she "assumed" there would be an indemnification but did not actually know if BOA ever circulated a version with such language.

"stolen hundreds of thousands of dollars over the past nine years from my family."

Maree further admits to referring to a BOA employee as a "meathead clerk."

After BOA petitioned for dissolution, and the Maree defendants counterclaimed, the parties filed cross-motions for summary judgment, which were heard by the trial court on October 12, 2012. On May 6, 2013, the trial court issued an order granting BOA's petition for dissolution and final accounting as well as BOA's motion for summary judgment as to Maree's counterclaim for conversion. The trial court denied BOA's motion for summary judgment as to the Maree Parties' counterclaims for breach of contract, breach of the duty of good faith and fair dealing, and breach of fiduciary duty. The trial court did not reach BOA's request for an order for the payment of its litigation fees out of ROMAR's funds or BOA's motion as to the Maree Parties' counterclaim for punitive damages.

In granting dissolution, the trial court relied on partnership law, first noting:

> The Court may order dissolution under certain circumstances, such as where a party (1) "has been guilty of such conduct as tends to affect prejudicially the carrying on of the business"; (2) willfully or persistently breaches the agreement or otherwise acts in such a way "that it is not reasonably practicable to carry on the business"; or (3) under other such circumstances as would render dissolution equitable. OCGA § 14-8-32 (a) (3-5).

11

The court further noted that, although the parties disputed whether management deadlock existed, they each alleged that the other had breached the joint venture agreement and their duties to the joint venture. Therefore, the court concluded that "dissolution of the joint venture is an appropriate equitable remedy under the circumstances." These appeals followed.

*Case No. A14A0875*

1. The Maree Parties first contend that the trial court erred by applying partnership law to determine whether ROMAR should be dissolved. We find that they have waived this argument by failing to assert it in the trial court. In its petition, BOA specifically alleged that ROMAR is a partnership governed by Georgia partnership law. Not only did the Maree Parties admit this allegation in their answer, we find no indication in the record that they later argued otherwise.[11] Therefore, this enumeration of error is without merit. E.g., *Silver Pigeon Properties, LLC v. Fickling & Co.*, 316

---

[11] Although the Maree Parties assert that they argued that corporate law should apply to ROMAR during the summary judgment hearing, the record belies their assertion. First, they repeatedly refer to ROMAR as a "partnership" and the individual joint venturers as "partners." And although the Maree Parties point out that they relied on a case applying corporate law to define deadlock, the context shows that it was only because they were unable to locate a case specific to partnerships: "Now, in order for there to be deadlock, Georgia law in the case of a corporation – we can't find one specifically in Georgia on a partnership – talks about four concepts."

Ga. App. 167, 170, n. 10 (728 SE2d 801) (2012) (argument not raised in the trial court is waived and cannot be raised for the first time on appeal).

2. The Maree Parties also assert that the trial court erred in granting dissolution because there was no deadlock in the management of ROMAR. Despite agreeing with the vast majority of BOA's recitation of the lengthy history of contention and stalemate between the parties, they nonetheless argue that there was no deadlock because ROMAR continued to lease the properties and distribute profits to the joint venturers. However, a court may order dissolution of a partnership under various circumstances addressed in OCGA § 14-8-32 (a). Here, after reviewing the parties' extensive evidence and considering their arguments, the trial court found that dissolution was an appropriate equitable remedy under the circumstances. See OCGA § 14-8-32 (a) (5). "Equitable relief is generally a matter within the sound discretion of the trial court. The action of the trial court should be sustained on review where such discretion has not been abused." (Citation and punctuation omitted.) *Trotman v. Velociteach Project Mgmt., LLC*, 311 Ga. App. 208, 210 (2) (715 SE2d 449) (2011). Based on the record before us, we find no abuse of discretion in the trial court's grant of dissolution.

13

Moreover, we are also persuaded by BOA's argument that dissolution is proper under the terms of the Agreement.[12] Paragraph 13 (a) of the Agreement provides that

> [t]he occurrence of any one of the following events shall cause the dissolution of the Joint Venture:
>
> (1) The expiration of the term of this agreement;
>
> (2) The agreement of two-thirds in interest and not in numbers of the Joint Venturers to dissolve the Joint Venture;
>
> (3) The management of the Joint Venture shall be deadlocked and no action can be approved nor taken for lack of the agreement of a number of the

Joint Venturers entitled to vote upon the action sufficient to approve any of the proposed courses of action.

Even viewed in the light most favorable to the Maree Parties, the record clearly supports a finding that ROMAR has been deadlocked. Although the joint venturers, including Maree, have at times sought either dissolution and liquidation or the appointment of a new manager, the parties have not been able to effectuate either alternating course of action. Accordingly, this enumeration of error fails.

---

[12] We will affirm a grant of summary judgment if it is "right for any reason, whether stated or unstated in the trial court's order, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond." *Anderson v. Jones*, 323 Ga. App. 311, 312, n. 2 (745 SE2d 787) (2013).

14

3. In their third and fourth enumerations of error, the Maree Parties argue that the trial court erred in granting summary judgment to BOA as to their claim of conversion arising from BOA's payment of approximately $190,000 in attorney fees for the litigation up through September 2011 out of ROMAR's cash reserves.[13] BOA admits that it did so, but maintains that the payment of the attorney fees was for the benefit of ROMAR and not for its own benefit. In granting summary judgment to BOA on this counterclaim, the trial court found that a conversion claim does not exist because the Maree Parties did not plead for the recovery of a specific fund of money. We agree.

It is well settled that

[w]hile money constitutes personal property, money is intangible personalty that is fungible, because it belongs to a class of property which cannot be differentiated by specific identification unless there has been created a specific fund that has been set aside from other money. Thus, there can be no conversion action for money damages for money, because generally, money is not subject to a civil action for conversion.

---

[13] No attorney fees were paid after September 2011 following the entry of a TRO to preserve the status quo during litigation.

(Citations omitted.) *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 359 (2) (551 SE2d 765) (2001).

The Maree Parties correctly argue that there are exceptions to this general rule where the money is a "specific, separate, identifiable fund" to which the plaintiff "had an immediate right of possession." *Taylor*, 250 Ga. App. at 359 (2). However, they have failed to show that the money at issue falls within such an exception. The money was withdrawn from a joint fund that belonged to all joint venturers according to their respective ownership percentages and which was used for a variety of business purposes. Cf. *Adler v. Hertling*, 215 Ga. App. 769, 773-774 (2) (451 SE2d 91) (1994) (proceeds from a real estate refinancing held in escrow for sole use of one party were specific and identifiable). The trial court did not err in granting summary judgment to BOA as to the Maree Parties' counterclaim for conversion.

4. In their fifth enumeration of error, the Maree Parties assert that the trial court erred in denying summary judgment on their counterclaim that BOA's use of the ROMAR funds for its attorney fees was a breach of the Agreement. In its cross-appeal, BOA likewise argues that the trial court should have decided this breach of contract claim as a matter of law. The parties are correct that "[a]t least initially, [contract] construction is a matter of law for the court. First, the trial court must

16

decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning." (Citation omitted.) *Mapei Corp. v. Prosser*, __ Ga. App. __ (4) (Case No. A14A0368, decided July 9, 2014). Because the construction of contracts is a matter of law, the trial court's application is reviewed de novo. See *McKinley v. Coliseum Health Group, LLC*, 308 Ga. App. 768, 770 (708 SE2d 682) (2011).

Turning first to the language of the Agreement, BOA asserts that Paragraph 14 (b) allowed it to use ROMAR funds to pursue dissolution of the joint venture. Paragraph 14 (b) of the Agreement provides:

> In the event the Joint Venturers cannot agree upon the shares and manner of distribution within sixty (60) days of the event bringing about dissolution, any Joint Venturer may apply to the senior judge of the Cobb Judicial Circuit, Marietta, Cobb County, Georgia, for the appointment of an appraiser to appraise the assets and to divide the assets between the Joint Venturers and Assignees.

> The cost of this procedure, including the filing of and proceedings in regard to the application, shall be paid from the assets of the Joint Venture.

> The appraisal and division shall be final and binding upon all Joint Venturers and Assignees.

17

The Maree Parties argue, however, that this Paragraph only applies to the liquidation of assets *following* dissolution of ROMAR if the parties are unable to agree upon the manner of distribution. We agree that the plain language of this Paragraph, particularly when read and considered within the proper context of the entire Agreement,[14] is unambiguous and does not permit BOA to recover its attorney fees associated with the filing of its petition for dissolution.[15] Nor does Paragraph 14 (b) allow BOA to recover attorney fees incurred as a result of a claim made by a joint venturer against it. BOA has pointed to no other portion of the Agreement that would permit it to utilize ROMAR's funds for the payment of its attorney fees, and we find none. Therefore, we find that BOA breached the Agreement when it unilaterally expended ROMAR's funds to do so.

---

[14] For example, Paragraph 14 (a) of the Agreement sets out the grounds for dissolution and makes no provision for the payment of litigation costs or attorney fees.

[15] We likewise find BOA's reliance on *Buttrill v. Buttrill*, 179 Ga. 759 (177 SE2d 576) (1934), unavailing. In *Buttrill*, although the attorney fees accrued from bringing the dissolution petition were ordered to be paid from the partnership estate, both partners had jointly sought dissolution, and our Supreme Court held that the trial court should have awarded fees expended to pursue their common claims. Id. Here, although dissolution was ultimately granted, one of the parties sharply disputed BOA's petition.

18

BOA attempts to justify its actions by arguing that it had the authority to "declare deadlock under the [] Agreement and to begin dissolution automatically," but, "due to the historical difficulties and out of an abundance of caution, [it] sought court-approved dissolution." Thus, in order to extricate itself as definitively as possible, BOA made a strategic decision to utilize the court system to effect dissolution. This may well have been a good business decision that will allow the parties to finally part ways; however, BOA's desire for finality does not change the plain language of the Agreement with respect to the payment of attorney fees, and that price must be borne by BOA.

Accordingly, the trial court erred by failing to find as a matter of law that BOA breached the Agreement with respect to its payment of attorney fees with ROMAR funds to the extent those fees were incurred either in conjunction with the filing of the petition for dissolution or in defending against the Maree Parties' counterclaims.[16] See *Fidelity Nat. Title Ins. Co. of N.Y. v. OHIC Ins. Co.*, 275 Ga. App. 55 (619 SE2d 704) (2005) (trial court erred in failing to decide the parties' cross-motions for

---

[16] In so holding, we do not reach the issue of whether BOA may be entitled to the recovery of attorney fees under any alternate theory of recovery that it may have asserted below and that was not addressed by the trial court in its order on the parties' cross-motions for summary judgment.

summary judgment as a matter of law where the contract language was unambiguous). However, to the extent BOA incurred legal fees that would be covered under Paragraph 14 (b), i.e., those associated with the appointment of an appraiser to assist in the appraisal and division of ROMAR's assets, BOA will be permitted on remand to present evidence as to any such attorney fees that were reasonable and necessary.

5. In their final enumeration of error, the Maree Parties allege that the trial court erred by not giving any direction or instruction to the manager now in charge of the dissolution. In its order, the trial court found that BOA had requested that Colliers International Management-Atlanta, LLC ("Colliers") be appointed to manage the dissolution and gave the Maree Parties 20 days to object to Colliers' appointment and to submit an alternate manager if necessary. After 20 days passed without objection, BOA filed a motion for entry of order appointing Colliers along with a proposal detailing the dissolution procedures. It was only at this point that the Maree Parties filed an opposition, arguing for a number of restrictions that should be placed on Colliers. Before the trial court could rule, the Maree Parties filed this appeal, thereby depriving the trial court of jurisdiction to rule on the motion. Because the trial court has not yet ruled on the pending motion for entry of an order appointing Collier,

there is no error for this Court to review, and this enumeration of error is without merit. See *Mercer v. Washington Mut. Home Loans, Inc.*, 287 Ga. App. 388, 388 (651 SE2d 499) (2007).

### Case No. A14A0876

In its cross-appeal, BOA alleges that the trial court should have granted its motion for summary judgment on each of the Maree Parties' counterclaims.

6. In its first two enumerations of error, BOA argues that the trial court should have granted its motion for summary judgment on the Maree Parties' various breach of contract counterclaims and, therefore, their breach of the duty of good faith and fair dealing counterclaim as well. These claims stem from their allegations that BOA (a) failed to properly market the 8000 Miller Court Property, (b) improperly used ROMAR funds to pay its attorney fees in connection with this action, and (c) improperly used ROMAR funds to pay its attorney fees in connection with the preparation of an amended Agreement.

(a) The Maree Parties claim that BOA breached the Agreement and the duty of good faith and fair dealing in its handling of the 8000 Miller Court Property. Specifically, they claim that in 2002, the 8000 Miller Court Property was not leased and BOA failed for months to take action to effectively market the property, allowing

21

it to remain vacant for approximately one year until a new lease was finally executed. They also claim that a similar situation occurred in 2005. Although the tenant's lease did not expire until August 31, 2005, the tenant left the property in November 2004. However, BOA did not list the 8000 Miller Court Property for lease until September 2005, and it remained unleased until it was eventually sold in 2007 as part of the joint venturers' liquidation attempts.

The Agreement defines ROMAR's business as "acquiring, holding, maintaining, leasing, exchanging, and disposing of" the properties owned by ROMAR, but is silent as to the precise manner in which BOA is "to manage and control" that business. However, "absent an express contractual provision to the contrary, a duty of good faith and fair dealing is implied into all nonleasehold contract provisions granting discretion to one of the parties." *Hunting Aircraft, Inc. v. Peachtree City Airport Authority*, 281 Ga. App. 450, 450 (636 SE2d 139) (2006). Thus, where, as here, "the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith." (Citations and punctuation omitted.) Id. at 453-454 (2). "Good faith and reasonableness do not comprehend arbitrary or capricious reasons, or considerations based on pecuniary gain, or merely personal preferences; rather, they refer to the

22

considerations of fairness and commercial reasonableness." (Citations and punctuation omitted.) Id. at 452 (1).

BOA does not dispute that the 8000 Miller Court Property remained vacant for periods of time. Rather, it first argues that the Maree Parties' claims related to it are time barred by the six-year statute of limitations under OCGA § 9-3-24. However, as the Maree Parties point out, the statute of limitations for a contract under seal, as is the Agreement, is 20 years. OCGA § 9-3-23. See also *Georgia Receivables, Inc. v. Maddox*, 216 Ga. App. 164, 164 (1) (454 SE2d 541) (1995).

BOA also argues that the Maree Parties are unable to prove damages. "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2. And,

> [t]o avoid summary judgment, a party is not required to present evidence of a specific dollar amount of damages. Rather, he must only present evidence sufficient to serve as the basis for a factfinder to calculate the amount of damages due should liability be established. And in cases such as this one, where the damages relate to the value of real or personal property, the question of value is normally regarded as peculiarly for the determination of the jury. Thus, a claim for damages

23

related to value will be submitted to the jury where there is any data in the evidence upon which the jury may legitimately exercise their own knowledge and ideas. After a witness has given his basis for opinion evidence as to value, it is up to the jury to determine its weight.

(Citations and punctuation omitted.) *Beale v. O'Shea*, 319 Ga. App. 1, 6 (1) (735 SE2d 29) (2012).

For the periods of time that the 8000 Miller Court Property remained vacant, ROMAR would have naturally suffered damages in the form of lost rent. And as evidence of the amount of lost rent, Maree submitted an affidavit that ROMAR lost approximately $88,000 in rent each year that the property was not leased. With respect to damages calculated on the value of property,

testimony as to market value is in the nature of opinion evidence. One need not be an expert or dealer in the article in question but may testify as to its value if he has had an opportunity for forming a correct opinion. The opportunity for forming an opinion as to value may be established by showing the witness's experience and familiarity with the item being valued.

24

(Citations and punctuation omitted.) *Beale*, 319 Ga. App. at 6.[17] Here, Maree based her estimate on "rental rates in the area, information from appraisals, and [her] knowledge of the commercial real estate market in the area." This is sufficient to create a foundation for the jury to consider her opinion as to the property's rental value. See id. at 7 ("For a witness to give his opinion as to value, the must give his reasons for forming that opinion by showing that he has some knowledge, experience, or familiarity as to the value of the item.") (punctuation omitted). See also *In re Estate of Hubert*, 325 Ga. App. 276, 286-287 (6) (750 SE2d 511) (2013) (finding sufficient foundation where witness's testimony established he was familiar with the properties at issue, in which he had an ownership interest, and that he also was familiar with comparable properties, which he had considered in reaching his opinion).

Viewing the evidence in the light most favorable to the Maree Parties as the nonmovants, we find that they have set forth sufficient evidence to create a genuine

---

[17] Because the summary judgment hearing was conducted before January 1, 2013, former OCGA § 24-9-66 applies. See Ga. L. 2011, p. 99, § 101. Compare OCGA § 24-7-701 (b) under our new Evidence Code, which provides that "[d]irect testimony as to market value is in the nature of opinion evidence. A witness need not be an expert or dealer in an article or property to testify as to its value if he or she has had an opportunity to form a reasoned opinion."

issue of material fact regarding whether BOA failed to meet its contractual obligations to manage and control ROMAR's business, including "acquiring, holding, maintaining, leasing, exchanging, and disposing of" the properties owned by ROMAR and the corresponding duty of good faith and fair dealing with respect to these provisions. See *Hunting Aircraft, Inc.*, 281 Ga. App. at 452 (1) (what constitutes good faith is a question for the finder of fact). Accordingly, the trial court did not err in denying BOA's motion for summary judgment as to the Maree Parties' counterclaims for breach of contract and breach of the duty of good faith and fair dealing regarding its management of the 8000 Miller Court Property. See, e.g., *Racette v. Bank of America*, 318 Ga. App. 171, 181 (5) (733 SE2d 457) (2012).

(b) For the reasons discussed in Division 4, BOA's argument that it did not breach the Agreement when it paid its attorney fees with ROMAR's funds fails as a matter of law to the extent those fees were incurred for any reason outside those specifically delineated in Paragraph 14 (b) of the Agreement. For the same reasons, the trial court correctly denied summary judgment on the corresponding counterclaim for breach of the duty of good faith and fair dealing.

(c) The Maree Parties also asserted a breach of contract counterclaim based on BOA's use of ROMAR funds to pay its attorney fees arising from the preparation of

26

an amendment to the Agreement. They argue that the amendment was undertaken for the purpose of replacing BOA as the Manager, which is outside the scope of the authority vested in the Manager. However, the Maree Parties have admitted that in 2007, Maree again demanded that BOA be replaced as Manager. They have also admitted that, at a September 2007 meeting, the joint venturers unanimously agreed that the Agreement and structure of ROMAR with BOA as the Manager was no longer optimal, that a new, restated Agreement should be prepared to allow for the installation of a new manager, and that BOA could retain counsel to effectuate the amendments. The authority to retain counsel necessarily carries with it the right to pay counsel from ROMAR funds. Accordingly, the trial court erred in denying summary judgment to BOA on the Maree Parties' breach of contract and breach of the duty of good faith and fair dealing counterclaims with respect to the payment of attorney fees for preparing an amended Agreement.

(d) In their amended answer and counterclaim, the Maree Parties sought attorney fees pursuant to OCGA § 13-6-11 in conjunction with their breach of contract claims, and BOA moved for summary judgment on their request for those attorney fees. In its order, the trial court did not specifically address this issue, but

27

rather denied BOA's motion for summary judgment as to the Maree Parties' counterclaim for breach of contract as a whole.

BOA contends that because there was no breach of contract, the Maree Parties are, therefore, not entitled to attorney fees under OCGA § 13-6-11. BOA further contends that even if it did breach the Agreement, the Maree Parties have presented no evidence that it committed a breach due to a sinister motive or self interest. We first note that certain of the Maree Parties' breach of contract counterclaims have survived summary judgment. And there is some evidence to support their contention that BOA paid its attorney fees out of ROMAR funds to enrich itself. Therefore, the trial court did not err in denying BOA's motion for summary judgment on the Maree Parties' counterclaim for attorney fees pursuant to OCGA § 13-6-11 on this basis.[18]

---

[18] We note, however, that because the Maree Parties' breach of contract counterclaims appear to arise from the same Agreement that forms the basis for BOA's petition for dissolution and accounting, they may be compulsory counterclaims and, thus, outside the scope of OCGA § 13-6-11. See, e.g., *Singh v. Sterling United, Inc.*, 326 Ga. App. 504, 513 (4) (756 SE2d 728) (2014) (plaintiff-in-counterclaim cannot recovery attorney fees under OCGA § 13-6-11 for fees associated with compulsory counterclaim). However, because BOA did not raise this argument in the trial court or on appeal, we decline to consider it. *Nebo Ventures, LLC v. Novapro Risk Solutions, L.P.*, 324 Ga. App. 836, 848 (4) (752 SE2d 18) (2013) ("we do not think an appellate court properly ought to consider whether the trial court was wrong for any reason") (citation and punctuation omitted).

7. BOA next asserts that the trial court erred in denying it summary judgment on the Maree Parties' breach of fiduciary duty counterclaim. The Maree Parties allege that BOA breached its fiduciary duty when it abused its position as Manager to divert funds from ROMAR to finance its litigation, which in turn caused a suspension of the distributions to the joint venturers.

> It is well settled that a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach. OCGA § 23-2-58 provides that a fiduciary duty exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal, and agent, etc." The existence of a confidential or fiduciary relationship is a question for the jury. Such relationship may be created by law, contract, or the facts of a particular case. Moreover, because a confidential relationship may be found whenever one party is justified in reposing confidence in another, the existence of this relationship is generally a factual matter for the jury to resolve.

(Citation and punctuation omitted.) *Bedsole v. Action Outdoor Advertising JV, LLC*, 325 Ga. App. 194, 201 (4) (750 SE2d 445) (2013).

BOA does not dispute that a fiduciary relationship arises from its role as trustee of a partner to the ROMAR partnership. BOA instead argues that there was no breach of fiduciary duty because the suspension of the joint venturers' distributions was authorized by the joint venturers' agreement to replenish ROMAR's reserves and because its payment of attorney fees did not breach the Agreement.

> While it is true that in this State, a tort action cannot be based on the breach of a contractual duty only, it can be based on conduct which, in addition to breaching a duty imposed by contract, also breaches a duty imposed by law. Where private duties arise from relations created by the contract, express or implied, one may pursue a tort action for damages flowing from the exercise or failure to exercise that duty.

(Citations and punctuation omitted.) *Spears v. Mack & Bernstein, P.C.*, 227 Ga. App. 743, 745 (490 SE2d 463) (1997) (finding partners had some fiduciary duty to treat other partners fairly and in good faith). Here, the Maree Parties have successfully shown that BOA breached the Agreement through its payment of attorney fees incurred in filing the petition for dissolution. Moreover, Maree presented evidence that the joint venturers only agreed to suspend distributions in order to replenish the reserves as a result of BOA's warnings that bankruptcy might result if BOA prevailed in this lawsuit and ROMAR did not have sufficient funds to pay BOA's attorney fees.

30

Because questions of fact exist regarding whether BOA exercised good faith by depleting ROMAR funds and suspending distributions, the trial court did not err in denying BOA's motion for summary judgment as to the Maree Parties' counterclaim for breach of fiduciary duty.

8. BOA also argues that the trial court should have granted its motion for summary judgment as to the Maree Parties' counterclaim for punitive damages.[19] "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). BOA is correct, of course, that punitive damages are generally not available in an action for breach of contract. See *Trust Co. Bank v. C & S Trust Co.*, 260 Ga. 124, 126 (1) (390 SE2d 589) (1990); *Layer v. Clipper Petroleum, Inc.*, 319 Ga. App. 410, 420 (8) (735 SE2d 65) (2012). However, a breach of fiduciary duty will support an award of punitive damages. See *Bunch v. Byington*, 292 Ga. App. 497,

---

[19] We reject BOA's initial argument that the Maree Parties waived their claim for punitive damages by not addressing it in their summary judgment briefing below. Through an independent review of the record, we find that they did in fact address punitive damages in their June 8, 2012 opposition brief and also at the hearing on the cross-motions.

504 (4) (664 SE2d 842) (2008). Because we found in Division 7 that the Maree Parties' counterclaim for breach of fiduciary duty survives, and because they have presented evidence from which a jury could properly conclude that an award of punitive damages is warranted, this enumeration of error fails. See *Fernandez v. WebSingularity, Inc.*, 299 Ga. App. 11, 20 (7) (681 SE2d 717) (2009).

9. Lastly, BOA maintains that the trial court should have granted its request for an order permitting the payment of attorney fees out of ROMAR's joint funds. As discussed in Division 4, ROMAR is only permitted the payment of any reasonable attorney fees it may have incurred that would be authorized under Paragraph 14 (b) of the Agreement, i.e., those associated with the appointment of an appraiser to assist in the appraisal and division of ROMAR's assets.

In sum, we affirm the trial court's order granting dissolution and summary judgment to BOA as to the Maree Parties' conversion claim. We affirm the trial court's order denying summary judgment to BOA as to the Maree Parties' counterclaims for breach of contract and breach of the duty of good faith and fair dealing as to BOA's management of the 8000 Miller Court Property, breach of fiduciary duty, and for attorney fees pursuant to OCGA § 13-6-11. We reverse the trial court's denial of summary judgment to BOA as to the Maree Parties'

counterclaims for breach of contract and breach of the duty of good faith and fair dealing with respect to BOA's payment of attorney fees associated with the preparation of an amended Agreement. We further find that the Maree Parties' counterclaim for punitive damages survives summary judgment. And finally, we reverse the trial court's denial of summary judgment on the Maree Parties' counterclaim for breach of contract with respect to BOA's payment of certain attorney fees using ROMAR funds and therefore remand for further proceedings consistent with this opinion.

*Judgments affirmed in part, reversed in part and cases remanded. Phipps, C. J., and Ellington, P. J., concur.*