## S12A1656. SIMMONS v. THE STATE.
### (736 SE2d 402)

MELTON, Justice.

Following a jury trial, Carla Joan Simmons was found guilty of felony murder and various other offenses in connection with the strangulation death of Paul Rucker.[1] On appeal, Simmons contends

---

[1] On September 11, 2006, Simmons was indicted for malice murder, two counts of felony murder (with aggravated assault and conspiracy to distribute cocaine as the underlying felonies), two counts of burglary, armed robbery, two counts of attempted armed robbery, aggravated battery, two counts of aggravated assault, three counts of tampering with evidence, and conspiracy to distribute crack cocaine. Following a January 22-31, 2007 jury trial, Simmons was found guilty on all counts except for malice murder, one count of attempted armed robbery, aggravated battery, one count of aggravated assault, and one count of tampering with evidence. On February 8, 2007, Simmons was sentenced to life imprisonment for felony murder; ten concurrent years on probation for each count of burglary (that were also to run consecutive to her life sentence); twenty concurrent years for armed robbery; and ten concurrent years for the

that the evidence presented at trial was insufficient to sustain her convictions and that the trial court erred in granting the State's motion to withdraw the parties' plea agreement. We affirm.

1. Viewed in the light most favorable to the jury's verdict, the record reveals that, on September 27, 2004, the day before Rucker's murder, Simmons, Torrell Young, Jodi McWalters, Kathy Arwood, Donnie Murphy, and Ashley Davis traveled to Rucker's home. They were led there by Rucker's friend Kathy Arwood, who suggested the group go to Rucker's home to "party." Rucker invited the group into his home even though Arwood was the only member of the group he knew. Later, when Rucker opened his wallet, the guests saw a substantial amount of cash inside. After leaving Rucker's home, most of the group traveled to the Bulldog Inn in Athens, Georgia, where Roderick Cooper joined them. The group discussed the money Rucker had in his wallet and devised a plan to steal that money.

The next day, Simmons, Young, Cooper, and Murphy went to Rucker's home in Simmons's car. While en route, the group smoked crack provided by Cooper, who also had a gun. The group devised a plan for Simmons to enter the house and dance erotically for Rucker, which would give the remainder of the group the opportunity to enter Rucker's home and rob him. Upon arriving at the house, Rucker declined Simmons's offer to dance for him. The group then changed the plan so that Simmons would instead offer to have sex with Rucker for money to distract him. After Simmons entered the house with the new plan, Young and Murphy entered the home and went to Rucker's bedroom where Simmons was with the now naked victim. Simmons fled from the house when Young and Murphy entered the room. While in the room, Murphy repeatedly struck the victim with a liquor bottle, and Young kicked Rucker and struck him with a telephone. Young and Murphy then searched the bedroom and other parts of the house but were unable to find any money. While Young and Murphy were beating Rucker, Simmons re-entered the house, but Murphy told Simmons not to come into the room.

Cooper, who was waiting in the car, later entered the house after being encouraged by Simmons. Once inside the house, Cooper pointed his gun at Rucker and demanded Rucker give them money. After failing to find any money, Young and Cooper left the room, leaving Murphy alone with Rucker. While exiting the house, Young and

---

attempted armed robbery count and each of the two tampering with evidence counts. The remaining counts merged for sentencing purposes. Simmons filed a motion for a new trial on February 2, 2007, which she amended on April 26, 2011. The motion was denied on February 10, 2012. Simmons' timely appeal was docketed in this Court for the September 2012 term, and was submitted for decision on the briefs.

Cooper stole Rucker's computer from the living room. After Young and Cooper left the house, Murphy strangled Rucker to death with his hands and then exited the house carrying the bottle used to strike the victim. Murphy's clothing was covered with the victim's blood and feces. As the group drove away, Murphy threw the bottle from the car off the side of the road. The group subsequently drove to a nearby convenience store, where Murphy discarded his soiled clothes behind the store and dressed himself in a pair of pants stolen from a nearby clothesline. At some point, the group stopped and sold Rucker's stolen computer for $50. The group used the money to buy crack from Cooper and returned to the Bulldog Inn, where they broke into a room to use the drugs.

The evidence was sufficient to enable a rational trier of fact to find Simmons guilty of all of the crimes for which she was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (parties to a crime).

2. Simmons contends that the trial court erred in granting the State's motion to withdraw the parties' plea agreement.[2] Specifically, Simmons argues that, even if she made statements to her fellow cell mates that contradicted the testimony that she had previously given at her plea hearing, she could not have violated her plea agreement because she had not yet given untruthful testimony at the *trial* of her co-defendants. However, it was not necessary for the State to wait until Simmons testified at trial before moving to have her plea agreement withdrawn. "A plea agreement is, in essence, a contract between a defendant and the State[,]" and "[w]hen the breach of the agreement is so substantial and fundamental *as to defeat the object of the contract*, rescission is an appropriate remedy." (Punctuation and footnote omitted; emphasis supplied.) *Brown v. State*, 261 Ga. App. 115, 116-117 (582 SE2d 13) (2003).

Here, the object of the plea agreement was to ensure that Simmons's testimony at trial would be truthful. By undermining her own credibility before trial by making inconsistent statements at her plea hearing and while imprisoned, the truthfulness of any future testimony given by Simmons at trial was immediately called into question. Indeed, the record reveals that, at her plea hearing, Simmons described the plan to murder Rucker and the involvement of Cooper, Young, Murphy, and herself. However, after her plea hearing but before the trial of her co-defendants, Simmons told a cell mate

---

[2] In her plea agreement, Simmons agreed to provide truthful testimony against her co-defendants at trial in exchange for pleading guilty to various offenses.

that Cooper was *not* involved in the murder and did not enter Rucker's home, and instead, stayed in the car. Further, Simmons told another cell mate that she *lied* during the plea hearing to obtain a lesser sentence. Such statements "defeat[ed] the object of the contract," which, for the State, was to obtain consistently truthful testimony from Simmons at trial. The State no longer had any way of ensuring that it would obtain such truthful testimony from Simmons after she had already directly contradicted her original story and undermined her own credibility prior to trial. Accordingly, rescission of her agreement with the State was appropriate. See, e.g., *Brown*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 2013.

*King, King & Jones, David H. Jones*, for appellant.
    *J. Bradley Smith, District Attorney, Samuel E. Skelton, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.