**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 18, 2015**

# In the Court of Appeals of Georgia

A14A1498. SYMS v. THE STATE.                    DO-054 C

DOYLE, Presiding Judge.

Louis Syms appeals the trial court's denial of his motion to enforce his plea agreement. For the reasons that follow, we reverse.

Syms was charged with possession of oxycodone with intent to distribute, which carries a punishment of ten to forty years, or life[1]; two counts of using a communication device during a felony, which is punishable by one to four years[2]; and selling alprazolam, which carries a punishment of one to ten years.[3] The indictment

---

[1] See OCGA §§ 16-13-30 (b) & (d); 16-13-26 (1) (A) (xiv) (listing oxycodone as a Schedule II controlled substance).

[2] See OCGA § 16-13-32.3 (a)-(b).

[3] See OCGA §§ 16-13-30 (b); 16-13-28 (a) (1) (listing alprazolam as a Schedule IV controlled substance).

further alleged that Syms had five prior convictions, one for selling a controlled substance, one for possessing a controlled substance, and three for habitual violator traffic violations. The State also petitioned to revoke Syms's probation for the commission of the four new crimes.

Justin Maines, the former assistant district attorney ("ADA") who was first assigned to Syms's case, testified that he and Syms's attorney reached an agreement in which (1) Syms would plead guilty to the charged crimes in exchange for the State not seeking recidivist punishment and recommending a ten-year total sentence, and (2) Syms would not challenge the revocation of his probation, and the State would make no recommendation to the trial court about the appropriate punishment upon revocation – a so-called "open-ended" revocation. Syms's attorney confirmed that this was the deal the parties agreed upon. According to defense counsel, the point of the State waiving recidivist punishment was to ensure that Syms would be eligible for parole.

At a November 13, 2012 calendar call, both defense counsel and the State affirmed that they had reached a plea agreement, noting that with regard to the probation revocation, the plea would be open-ended. The case was continued thereafter on two separate occasions at Syms's request, with no objection by the State.

2

Syms sought one continuance so that he could acquire evidence of his drug addiction and rehabilitation efforts to present in his defense at the open-ended revocation hearing. He sought a second continuance because he had information concerning an unrelated armed robbery that he hoped to exchange for a more favorable sentence in his own case.[4] Maines was not interested in Syms's potential information, and Maines considered the parties' original agreement to be binding.[5]

In January 2013, a new district attorney ("DA") was sworn in, Maines resigned, and a new ADA was assigned to Syms's case. The new DA instituted a policy that the office would no longer waive recidivist sentencing. Accordingly, the new ADA notified Syms's attorney that the State would not honor the plea deal because it was "both stale (8 months old) and unreasonable based on our new prosecution standards."

Syms filed a motion to enforce the plea agreement. Following a hearing, the trial court denied the motion on the ground that no clear, definite, and enforceable

_____

[4] The record contains a copy of a January 3, 2013 email from defense counsel to Maines asking whether Maines would be willing to "help [Syms] out with a better" offer than that they had agreed upon in exchange for information related to a "multi-party armed robbery of a restaurant."

[5] Maines testified that he "believed that [defense counsel] wanted to see if both sides would want to enter into a new agreement if . . . Syms had new information."

agreement existed. The trial court certified its order for immediate review at Syms's

request, and Syms filed an interlocutory application, which this Court granted. This

appeal followed.

"Whether a settlement is an enforceable agreement is a question of contract law

for the trial court, but an appellate court owes no deference to its conclusions."[6]

"'Public policy and the great ends of justice'" generally require the enforcement of

plea agreements between prosecutors and defendants.[7] As the Supreme Court of

Georgia has held, "[t]he integrity of the office of the district attorney demands that

promises made by the district attorney are binding on his successor to the extent that

they are valid and enforceable."[8] "A plea agreement is, in essence, a contract between

a defendant and the State. Given the unique nature of the agreement, we avoid

'slavish adherence' to civil contract principles. Nonetheless, rules of contract often

---

[6] *Capitol Materials, Inc. v. Kellogg & Kimsey, Inc.*, 242 Ga. App. 584, 586 (3) (530 SE2d 488) (2000).

[7] *Glover v. State*, 258 Ga. App. 527, 529 (574 SE2d 565) (2002).

[8] *State v. Hanson*, 249 Ga. 739, 746 (4) (295 SE2d 297) (1982).

provide the appropriate framework for addressing disputes involving plea agreements."[9]

Here, the trial court acknowledged that the parties had reached an agreement, but deemed it unenforceable because the record did "not demonstrate how . . . [Syms] would have plead[ed] or how he would have been sentenced as to each of these counts." According to the principles of contract law, a contract is enforceable as long as the parties have reached agreement on the essential terms, "and the absence of agreement on nonessential terms does not render the agreement unenforceable."[10] Here, the essential term was the sentence to be served – ten years to serve, with the probation revocation open-ended. That the agreement was silent as to the specific sentences for each of the charges, in the absence of any agreement that any of the charges would be dropped or reduced, does not render the agreement unenforceable.[11]

---

[9] (Footnotes omitted.) *Brown v. State*, 261 Ga. App. 115, 116-117 (582 SE2d 13) (2003), citing *Glover*, 258 Ga. App. at 529; *Gibson v. State*, 257 Ga. App. 134, 135 (1) (570 SE2d 437) (2002); *Sparks v. State*, 232 Ga. App. 179, 182 (3) (b) (501 SE2d 562) (1998).

[10] *Rushin v. Ussery*, 298 Ga. App. 830, 834 (2) (681 SE2d 263) (2009).

[11] The State argues that defense counsel's conversations with the former ADA regarding the possibility of negotiating a new reduced sentence in exchange for information about another crime constituted a counteroffer. We disagree. The State made an offer, and Syms accepted it in or around November 2013. Defense counsel's

"This is simply a case where an agreement as to terms was clearly made[,] and then [the State] changed [its] mind and no longer wanted to [honor the plea agreement.]"[12] Thus, the trial court erred by denying Syms's motion to enforce the agreement.

*Judgment reversed. Miller and Dillard, JJ., concur.*

---

subsequent inquiry regarding the possibility of renegotiating the plea agreement, in the absence of any revocation by either party, does not constitute a counteroffer that invalidates the parties' prior agreement.

[12] (Punctuation omitted.) *Johnson v. DeKalb County*, 314 Ga. App. 790, 794-795 (1) (726 SE2d 102) (2012).