**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 7, 2021**

# In the Court of Appeals of Georgia

A21A0340. THE STATE v. GRANT.

MCFADDEN, Chief Judge.

The state appeals the trial court's order dismissing two indictments against Dylan Grant. The trial court entered the order after granting Grant's motion to compel the state to comply with a plea agreement. The state argues that Grant breached the terms of the plea agreement and so is not entitled to the benefit of that agreement — to be prosecuted for charges less serious than those for which he was indicted. But the state has not shown that the trial court erred in granting Grant's motion to compel. So we affirm.

1. *Factual background.*

Early in 2017, Grant was sentenced as a first offender to seven years of probation for possession of more than an ounce of marijuana and possession of a

firearm or knife during the commission of a felony. On July 31, 2017, while he was on probation, Grant was arrested on warrants accusing him of having committed the new offenses of armed robbery and aggravated assault.

Less than a month later, the state filed a petition to revoke Grant's first-offender probation on the grounds that he had violated the terms of his probation by committing the new offenses and by committing the technical violations of failing to complete his community service hours, failing to undergo a substance abuse evaluation, and failing to pay court-ordered fines and fees.

On August 31, 2017, Grant had two hearings scheduled: a bond hearing on the new offenses and a hearing on the state's petition to revoke his probation. At some point that day, Grant's attorney and the assistant district attorney reached a plea agreement that addressed both the new charges and the probation revocation petition. They stated most of the terms of the agreement on the record at the probation revocation hearing. Under the agreement:

> the state would not pursue the allegation in the probation revocation petition that Grant had committed new offenses;

> Grant would stipulate to the allegation that he had committed technical violations of the terms of his probation;

2

Grant would consent to the revocation of his first-offender status and to an adjudication of guilt on the marijuana and weapon possession charges that underlay his first-offender probation;

Grant would be sentenced to nine years, to serve 180 days in confinement and the balance on probation, on the marijuana and weapon possession charges;

as for the new offenses, Grant would plead guilty to the misdemeanor offenses of obstruction of a law enforcement officer and criminal attempt to purchase less than an ounce of marijuana;

Grant would be questioned under oath and would testify truthfully regarding the new offenses.

The parties did not complete the plea proceedings for the new charges that day because the victim had not been notified as required by law, see OCGA § 17-17-5, so those plea proceedings were continued. But the parties completed other aspects of the plea agreement: the court revoked Grant's first-offender status; the court adjudicated Grant guilty and sentenced him in his probation case; and Grant was placed under oath and questioned by the assistant district attorney about the new charges.

In response to the assistant district attorney's questions, Grant testified that on July 31, 2017, Bruce Chambers asked Grant and Grant's girlfriend, Isis McCloud, to drive him to the victim's house. Once they arrived, Chambers went into the victim's house alone, and then he signaled Grant to come in. Grant entered the house, where Chambers was buying marijuana from the victim. Chambers pulled out a gun and shot the victim. Grant did not know what was going on and he exited the house. Before Grant could drive away, Chambers got in the car. Chambers directed Grant where to drive. Grant crashed the car, and he, McCloud, and Chambers fled. The police found Grant and McCloud in the woods.

The assistant district attorney asked Grant if he knew in advance that Chambers had a weapon or the purpose of Chambers's trip to the victim's house. To both questions, Grant answered, "No, ma'am."

About a month later, after the case had been assigned to a new assistant district attorney, the state notified Grant that it was withdrawing from the plea agreement because Grant had materially breached the terms of the agreement. The state contended that it had discovered from text messages on the phone of Bruce Chambers — who was not arrested until after the probation revocation hearing where Grant

gave his proffer and was adjudicated guilty — that Grant had been untruthful when he answered questions during his proffer.

On November 15, 2017, Grant was indicted for two counts of armed robbery, aggravated assault, cruelty to children, and fleeing or attempting to elude a police officer for the July 31 events.

Grant filed a motion to compel the state to comply with the terms of the plea agreement and a motion to quash the indictment. The superior court conducted a hearing on the motion to compel and granted it. The state appealed the order, but we dismissed the appeal for lack of jurisdiction.

After the case was returned to the trial court, the state moved for reconsideration of the grant of Grant's motion to compel. The next month, while its motion for reconsideration was pending, the state indicted Grant again for the July 31 events in an indictment that also charged Bruce Chambers as well as a third man. The new indictment charged Grant with two counts of armed robbery, aggravated assault, fleeing or attempting to elude a police officer, and eleven counts of street gang terrorism.

The court conducted a hearing on the state's motion for reconsideration at which the state presented new evidence in support of its contention that Grant had

5

been untruthful at the proffer, the testimony of Isis McCloud, Grant's girlfriend who had been with Grant and Chambers on July 31. The court denied the motion for reconsideration, found the state to be in contempt for failing to produce an accusation in accordance with the plea agreement, and dismissed both indictments against Grant. The state filed this appeal.

2. *The trial court did not err in granting the motion to enforce the plea agreement.*

The state argues that the evidence demands a finding that Grant materially breached the terms of his plea agreement. We affirm. There was sufficient evidence to support the trial court's ruling. And, as detailed in the margin, any legal error in its initial order was superceded by its order on reconsideration.[1]

---

[1]Two trial court judges were involved in this case. The original trial court order granting Grant's motion to compel the state to comply with the terms of the plea agreement, issued on May 18, 2018, was erroneous on its face to the extent that it stated that evidence discovered after Grant's acceptance and reliance on the plea offer was categorically "irrelevant" to the issue of whether he subsequently breached that agreement by failing to testify truthfully in accordance with the agreement's provisions. See, e.g., *Simmons v. State*, 292 Ga. 265, 267-268 (2) (736 SE2d 402) (2013). Nevertheless, upon a motion to reconsider filed by the state, a subsequently-assigned judge conducted an evidentiary hearing for the purpose of accepting and considering the state's new evidence offered in support of its assertion that Grant breached the agreement. The trial court then denied the motion for reconsideration by summary order dated June 25, 2020, and it is that order that is before this Court for review. Although the trial court did not and was not required to make express

6

It is the trial court's responsibility to determine, "based on the presentation of adequate evidence with respect to the parties' performance," whether a defendant has materially breached a plea agreement by failing to provide truthful testimony. *State v. Lewis*, 298 Ga. 126, 133-134 (4) (779 SE2d 643) (2015). "A trial court's order on a motion to enforce a settlement agreement based on undisputed facts is subject to de novo review." *In re Estate of Hubert*, 325 Ga. App. 276, 279 (2) (750 SE2d 511) (2013) (citation and punctuation omitted). See also *Syms v. State*, 331 Ga. App. 225, 227 (770 SE2d 305) (2015) (contract law can provide the framework for addressing disputes about plea agreements). But "the question here turns on a factual issue resolved by the trial court after considering evidence presented[, so] we treat resolution of such factual issues as subject to the 'clearly erroneous' standard of review. Under this standard we will uphold the trial court's factual findings if there is any evidence to support them." *In re Estate of Huff*, 287 Ga. App. 614, 614-615 (652 SE2d 203) (2007) (citations and punctuation omitted).

---

findings of fact or conclusions of law, we can infer from the procedural posture of this case and the ruling made subsequent to the evidentiary hearing that the court considered and rejected the state's argument of breach and the newly-discovered evidence offered in support thereof.

The state argues that Grant lied in his proffer when he testified that he did not know that Chambers was going to rob the victim on July 31. It argues that the text messages from and to Chambers's cellular telephone, some involving Grant, some involving other individuals, are evidence that Grant knew Chambers's intentions. It argues that Isis McCloud's testimony directly contradicted Grant's testimony that he did not know what was planned for July 31 and why Chambers wanted Grant to drive him to the victim's house.

In denying the state's motion for reconsideration, the trial court did not make any express factual findings, but we can infer from the denial of the motion that the court implicitly found that the state's evidence did not prove that Grant had materially breached the plea agreement by testifying untruthfully at the proffer. "The trial court made no explicit factual findings or credibility determinations on the record, but by [denying the state's motion for reconsideration], the court implicitly credited [Grant's] testimony, as it was authorized to do, to conclude that [Grant was not untruthful at his proffer]." *Scott v. State*, 307 Ga. 37, 42 (834 SE2d 88) (2019). The state has failed to show that this implicit factual finding is clearly erroneous. See generally *Kemp v. State*, 303 Ga. 385, 393 (2) (b) (810 SE2d 515) (2018) (reviewing

8

trial court's implicit factual findings regarding the admissibility of evidence for clear error).

The state relies on *Simmons v. State*, 292 Ga. 265, 267-268 (2) (736 SE2d 402) (2013), and *Brown v. State*, 261 Ga. App. 115 (582 SE2d 13) (2003), to support its argument that it is entitled to withdraw from the plea agreement because of Grant's breach. Those cases are distinguishable because neither depended on the trial court resolving the factual issue of whether the defendant had been untruthful.

In *Simmons*, the defendant testified at her plea hearing that she and three named individuals were involved in planning a murder, but afterwards, she told cell mates that one of the others was not involved and that she had lied to obtain a lesser sentence. 292 Ga. at 267-268 (2).

In *Brown*, we held that a defendant whose testimony at his co-defendant's trial directly contracted the defendant's testimony at his own plea hearing breached the plea agreement that required him to testify truthfully. 261 Ga. App. at 116.

Here, in contrast, Grant maintained the position that he had been truthful. He did not contradict himself.

Because the state has not shown that the trial court clearly erred in granting Grant's motion to enforce the plea agreement, we affirm.

*Judgment affirmed. Rickman, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*