**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 28, 2012**

# In the Court of Appeals of Georgia

A12A0980. AMERICAN MANAGEMENT SERVICES EAST,
    INC. et al. v. FORT BENNING FAMILY COMMUNITIES,
    LLC. et al.

BARNES, Presiding Judge.

American Management Services East LLC and American Management Services LLC (collectively "Pinnacle") appeal from the order of the trial court lifting the restriction in an earlier injunction that had prohibited Fort Belvoir Residential Communities (hereinafter "FBRC") from removing Pinnacle as the property manager at the Fort Belvoir facility.[1] On appeal, Pinnacle contends that the trial court deprived it of its due process rights by denying it a meaningful opportunity to be heard, abused its discretion in dissolving the restriction despite evidence showing that Pinnacle

---

[1] We granted a stay of the trial court's order pending the resolution of the appeal. .

would suffer irreparable harm, and erred in accepting an erroneous construction of the Belvoir Property Management Agreement ("PMA"). Upon our review, we affirm.

The facts relevant to this appeal demonstrate that Pinnacle is the property manager for privatized military housing in Fort Belvoir, Virginia and Fort Benning, Georgia. FBRC owns the Fort Belvoir property and Fort Benning Family Communities, LLC (hereinafter "FBFC"), owns the Fort Benning property. Pinnacle entered into property management agreements with FBRC and FBFC. On May 20, 2010, FBRC and FBFC filed a complaint in Muscogee County Superior Court seeking a declaratory judgment that Pinnacle's property management agreements with FBRC and FBFC had automatically terminated for cause because of Pinnacle's alleged misconduct at the Fort Benning property. The complaint also alleged breach of fiduciary duty, fraud, conspiracy to commit fraud, and unjust enrichment, and sought an accounting. The plaintiffs later amended the complaint to allege additional acts of fraud and other misconduct at Fort Benning as well.

On June 14, 2010, FBRC filed a motion for a temporary restraining order and interlocutory injunction to prevent Pinnacle from interfering with certain audit rights it had under the PMA. The trial court granted the TRO on June 25, 2010 and enjoined Pinnacle "from interfering with FBRC's audit of the Belvoir project," and directed

it to, among other things, provide the materials requested by the auditing firm, grant access to Pinnacle employees for interviews, and not communicate with its employees about the audit interviews. The order further provided that Pinnacle could have their own auditor and lawyer present during the interviews with Pinnacle employees.

A short time later, on July 9, 2010, FBRC filed another motion for a TRO requesting that the trial court direct Pinnacle to transfer the asset and property management database at Ft. Belvoir to a Yardi System - hosted server instead of a Pinnacle-hosted server, and to grant FBRC full access to the database. The trial court granted the motion on August 31, 2010 and further directed that FBRC could not "unilaterally remove [Pinnacle] from the Fort Belvoir project until such time as the Court has heard and decided the declaratory judgment action . . . or until further order of this Court."

On July 12, 2011, FBRC filed a motion to lift the restriction on removal of Pinnacle as the property manager at Fort Belvoir. FBRC alleged that as a result of an audit, it had uncovered instances of fiscal misconduct by Pinnacle at Fort Belvoir, including payoffs from vendors to Pinnacle employees, duplicate and "phantom" charges, overcharging by vendors, and falsifications of work orders. On October 14, 2011, after an extensive three-day hearing, the trial court granted FBRC's motion to

lift the restriction on removing Pinnacle from the Fort Belvoir facility . The October 2011 order modified the August 2010 order by removing the paragraph containing the restriction, and provided that "the remainder of the August . . . Temporary Restraining Order shall remain in full force and effect until further order of this Court." Pinnacle appeals from this order.

1. FBRC has moved to dismiss the appeal, contending that this Court lacks jurisdiction because Pinnacle failed to file an application for interlocutory review as required by OCGA § 5-6-34 (b). FBRC essentially argues that orders modifying TRO's or interlocutory injunctions are not directly appealable.

"It is incumbent upon this Court to inquire into its own jurisdiction." *Jenkins v. State*, 284 Ga. 642, 643 (1) (670 SE2d 425) (2008). OCGA § 5-6-34 (a) (4) provides that appeals may be taken from "[a]ll judgments or orders granting or refusing applications for receivers or for interlocutory or final injunctions."[2] The October 2011 order at issue in this case deleted from the August 2010 order the

---

[2] Although the order was referred to as a TRO, it remained in effect for more than a year. See OCGA § 9-11-65 (b) (TRO expires by its terms or no later than 30 days unless the party restrained consents to a longer period). Because the order was not limited to 30 days, it was not a TRO; instead, looking at substance over nomenclature, it was an interlocutory injunction that preserved the status quo pending a trial on the merits.

4

restriction against the unilateral removal of Pinnacle as property manager, but the order left in effect the remainder of the earlier injunctive order. Accordingly, the October 2011 order was itself an interlocutory injunction that modified the August 2010 interlocutory injunction, and was thus directly appealable pursuant to OCGA § 5-6-34 (a) (4).

Although FBRC cites *Clarke v. Atlanta Independent School System*, 311 Ga. App. 255 (715 SE2d 668) (2011), for the proposition that orders that merely amend previous grants of injunctive relief are not directly appealable, in that case, the appellants sought to appeal an order that addressed multiple orders. Id at 256. It ruled on two discovery motions, denied a motion to dismiss, denied a request for injunctive relief, and amended a prior order in which the court had granted an interlocutory injunction. Id at 256-257. However, the "appellants [did] not enumerate error upon the trial court's denial of injunctive relief and instead [sought] to invoke this Court's jurisdiction upon the basis that the order, in substance, granted partial summary judgment to the appellees and [was] therefore directly appealable." Id. at 255. The case did not address the issue of whether the appellants could have directly appealed the portion of the order denying injunctive relief or amending the prior order in which the court had granted an interlocutory injunction. Id.

5

Thus, as October 2011 order was an interlocutory injunction it was directly appealable pursuant to OCGA § 5-6-34 (a) (4), and FBRC's motion to dismiss is denied.

2. Pinnacle first contends that the October 2011 order lifting the provision that restricted FBRC from removing Pinnacle as the property manager at the Ft. Belvoir facility violated its due process rights. Pinnacle maintains several arguments within the context of its due process claim, including that entry of the June 2010 TRO prevented a full and meaningful presentation of the merits of the case, that the October 2011 order was based entirely on hearsay testimony, and that Pinnacle was improperly limited in its discovery.

> The constitution of this state guarantees to all persons due process of law and unfettered access to the courts of this state. These fundamental constitutional rights require that every party to a lawsuit be afforded the opportunity to be heard and to present his claim or defense, i.e., to have his day in court. Integral to these rights is the ability to present witnesses and other lawful evidence; thus, limitations imposed by a trial judge that prevent a full and meaningful presentation of the merits of the case mandate reversal.

(Citations and punctuation omitted.) *Cousins v. Macedonia Baptist Church*, 283 Ga. 570, 573-574 (1) (662 SE2d 533) (2008).

We first note that to the extent it asserts any arguments based on the provisions in the June 2010 TRO regarding FBRC's audit rights and access to its employee's audit interviews, the entry of that order has not been enumerated as error, and "[a] party cannot expand [its] enumerations of error through argument or citation in [its] brief." (Citation and punctuation omitted.) *Robertson v. State*, 277 Ga. App. 231, 233 (1), n. 5 (626 SE2d 206) (2006).[3] Pinnacle's

> argument pertaining to [the June 2010] order, under this particular enumeration, cannot be considered as one cannot expand the scope of review or supply additional issues through a process of switching, shifting, and mending your hold; statements in appellate briefs cannot expand the scope of review to include issues not reasonably contained within the enumeration under consideration.

*Jabaley v. Jabaley*, 208 Ga. App. 179, 180 (2) (430 SE2d 119) (1993).

---

[3] Pinnacle filed a motion to dissolve the June 2010 TRO, but it does not appear that the trial court ruled on the motion. "[I]t is the duty of counsel to obtain a ruling on his motions or objections, and the failure to do so will ordinarily result in a waiver."(Punctuation and footnote omitted.) *Totino v. State*, 266 Ga. App. 265, 268 (3) (596 SE2d 749) (2004). Moreover, if such a ruling was made, Pinnacle has not provided a record citation to it, and "this [C]ourt has no duty to cull the record in search of evidence to support the contentions of parties." *Cox v. Southern Guaranty Ins. Co.*, 254 Ga. App. 776, 778 (2) (563 SE2d 882) (2002).

Pinnacle also maintains that its due process rights were violated because the trial court considered the hearsay testimony of Louis Dudney, a certified public accountant, and the supervising forensic auditor for the auditing company conducting the audit of the Fort Belvoir facility. Dudney's affidavit was filed on July 19, 2011, and he also testified at the hearings on the motion to lift the restriction which were held on September 1, September 2, and September 12 of 2011. Dudney testified extensively about the various allegations of misconduct the auditing firm uncovered during the forensic audit, and recounted the auditing steps he undertook based on the allegations.

Pretermitting whether Dudney's testimony contained instances of hearsay, we note that "[i]n hearings on interlocutory injunction, the rules of evidence are not in all respects as rigidly enforced as on final trials. In such cases the admission of some secondary, hearsay, or opinion evidence will not necessarily require a reversal." (Citations and punctuation omitted.) *Kniepkamp v. Richards*, 192 Ga. 509, 521 (9) (16 SE2d 24) (1941). Likewise, when the trial court, sitting as the trier of fact, hears both admissible and inadmissible evidence, "it is presumed that he separates the wheat from the chaff." (Punctuation and footnote omitted.) *In the Interest of R. G.*, 249 Ga. App. 91, 96 (3) (547 SE2d 729) (2001). There is no indication here that the trial court

did otherwise. In its order lifting the restriction, the trial court indicated that it had "considered all pleadings and supporting affidavits and exhibits." And, indeed, the trial court had before it numerous independently admissible business records and sworn depositions upon which it could have based its opinion.

Furthermore, although Pinnacle alleges on appeal that the trial court "overruled more than two dozen specific objections," it then fails to argue with any particularity the basis for its contention that the trial court erred in overruling any one of those specific objections. Our review of the record leads us to conclude that many of the trial court's rulings were based on FBRC's assertion that the testimony was provided to show the steps of the auditing process rather than the truth of the matter asserted.[4] See OCGA § 24-3-14 (b). We will not presume that the trial court considered the testimony for any other purpose in rendering its ruling on the interlocutory injunction, where, as here, there is nothing in the record to suggest otherwise.

Pinnacle also appears to contend that its due process rights were violated because it was denied timely access to certain discovery, and because the trial court

---

[4] Summarized statements of what books of account and records show are admissible, provided the books and records themselves are accessible to the court and the parties. *Cotton v. John W. Eshelman & Sons*, 137 Ga. App. 360, 363 (2) (223 SE2d 757) (1976).

denied its motion for a continuance. Pinnacle's very general allegations regarding this error provide no basis for reversal. The evidence in the 26-volume record belies Pinnacle's contention that it was denied access to "basic discovery." The "trial court has broad discretion to control discovery . . . and this Court will not reverse the trial court's ruling on such matters absent the showing of a clear abuse of discretion." *Amaechi v. Somsino*, 259 Ga. App. 346, 347 (577 SE2d 48) (2003). Pinnacle has not demonstrated such abuse.

Likewise, to the extent that Pinnacle argues that the trial court erred in denying its motion for a continuance because it received certain documents "just weeks or days" before the hearing,

> [a] motion for continuance of a trial is properly addressed to the sound legal discretion of a trial judge, who is in control of the management of the case in court. The exercise of that discretion will not be disturbed by the appellate courts unless the discretion is manifestly abused. In all cases, the party making an application for a continuance must show that he has used due diligence.

(Citations and punctuation omitted.) *In re Estate of Jackson*, 241 Ga. App. 392, 393-394 (1) (526 SE2d 884) (1999). See also OCGA §§ 9-10-166; 9-10-167.

Moreover, Pinnacle has the burden to show error affirmatively by the record, and this burden cannot be discharged by merely reciting error in the brief. *Speir v. Krieger*, 235 Ga. App. 392, 394-395 (509 SE2d 684) (1998). Pinnacle's failure to fully support this enumeration with more that just a very generalized argument or citations to the record limits our ability to address it. Court of Appeals Rule 25 (c) (2).

3. Pinnacle also contends that the trial court erred in "dissolving" the August 2010 injunction. It contends that it will suffer irreparable harm if FBRC is permitted to terminate the Belvoir PMA before the trial. Specifically, Pinnacle asserts that the October 2011 order will moot the pending declaratory judgment action, will result in it being denied certain "variable" benefits under the PMA, and will jeopardize its equitable rights in Clark Pinnacle Belvoir, an affiliate company. We do not agree.

Trial courts have broad discretion in deciding whether to grant an interlocutory injunction, but "the power to do so shall be prudently and cautiously exercised." (Citations and punctuation omitted.) *Meinhardt v. Christianson*, 289 Ga. App. 238, 240 (2) (656 SE2d 568) (2008). We will not reverse the trial court's exercise of its discretion "unless a manifest abuse of that discretion is shown or unless there was no evidence on which to base the ruling." Id. at 241 (2). A trial court

11

may issue an interlocutory injunction to maintain the status quo until the final hearing if, by balancing the relative conveniences of the parties, it determines that they favor the party seeking the injunction. That is because an interlocutory injunction is a device to keep the parties in order to prevent one from hurting the other whilst their respective rights are under adjudication. There must be some vital necessity for the injunction so that one of the parties will not be damaged and left without adequate remedy.

(Citations and punctuation omitted.) *Hampton Island Founders v. Liberty Capital* 283 Ga. 289, 293 (1) (b) (658 SE2d 619) (2008).

In this case, Pinnacle has not shown irreparable harm, and while it argues that the October 2011 order removing the restriction threatens to moot the pending declaratory judgment action, and that it will be deprived of the financial and ancillary benefits of the remainder of the PMA's terms, the trial court's order makes no specific findings regarding Pinnacle's rights under the PMA. Pinnacle is not foreclosed from receiving money damages related to any wrongful termination of the PMA should the trial court ultimately hold that the contract was wrongfully terminated. Thus, Pinnacle

has not shown that, even if harmed by the interlocutory injunction, it is left without an adequate remedy. [5]

Although Pinnacle also argues that FBRC failed to show the likelihood of its success on the merits, "a trial court is not required to find that a movant is likely to succeed on the merits before granting an interlocutory injunction, under certain circumstances where other equitable factors counsel in favor of the grant." *Toberman v. Larose Ltd*, 281 Ga. App 771, 778 (1) (637 SE2d 158) (2006). Moreover, regarding Pinnacle's argument that public interest concerns favor the denial of the injunction because of the importance of its service in providing well-managed military housing,

> [A] contract should not be held unenforceable as being in contravention of public policy except in cases free from substantial doubt where the prejudice to the public interest clearly appears. Enforcement of a contract or a contract provision which is valid by the law governing the contract will not be denied on the ground of public policy, unless a "strong case" for such action is presented.

---

[5] Although in construing contracts our Georgia laws take into consideration the interests of individuals in gaining and pursuing a livelihood, and of commercial concerns in protecting property, relationships, good will and economic advantage, the broader public policy favors individual freedom to enter into contracts and to contract at will. *Shirk v. Loftis Bros. & Co.*, 148 Ga. 500 (97 SE 66) (1918)

13

(Citations and punctuation omitted.) *Nationwide General Ins. Co. v. Parnham*, 182 Ga. App. 823, 825 (4) (357 SE2d 139) (1987).

Here, based on the evidence in the record and balancing the relative equities of the parties, we cannot say it was a manifest abuse of the trial court's discretion to modify the injunction to lift the restriction prohibiting FBRC from removing Pinnacle as project manager at the Fort Belvoir facility.

4. Pinnacle also contends that the trial court erred in accepting FBRC's construction of the PMA. It maintains that by allowing FBRC to remove Pinnacle as the manager of the Fort Belvoir facility, the trial court misconstrued the terms of the PMA.

"On the hearing of an application for an interlocutory injunction, the trial judge should not undertake to finally adjudicate issues of fact, but should determine questions of evidence only to the extent necessary to decide whether interlocutory relief should be granted." *Oliver v. Forshee*, 224 Ga. 200 (1) (160 SE2d 828) (1968). Here, contrary to Pinnacle's assertion, the trial court made no conclusive factual or legal findings regarding the construction of the PMA. While its order, in effect, permitted FBRC to remove Pinnacle as the manager of the Fort Belvoir facility, the complaint in Muscogee County Superior Court seeking a declaratory judgment that

14

the property management agreements with Pinnacle automatically terminated for cause because of Pinnacle's alleged misconduct remains pending in the trial court. See *Bradley v. Roberts*, 233 Ga. 114 (210 SE2d 236) (1974); *Carter v. Puckett*, 237 Ga. 494 (228 SE2d 878) (1976). Thus, the issue of whether the PMA automatically terminated under the circumstances present here is left for further proceedings.

Accordingly, in these circumstances, the trial court did not abuse its discretion in lifting the restriction in its earlier injunction prohibiting FBRC from removing Pinnacle as the property manager.

*Judgment affirmed. Adams and McFadden, JJ., concur.*