Phipps, Chief Judge.
The City of Sandy Springs and 28 alleged “direct descendants” of the grantor of a deed and of one of several individuals named in the deed in whose favor a one-acre tract of land had been conveyed in 1900 for the purposes of a family burial ground, appeal the trial court’s denial of their joint motion for summary judgment on a complaint for declaratory judgment Christopher Mills filed in August 2012.[1] Mills, who was conveyed the property after it had been sold in a tax sale, filed the complaint after the City denied his request for a permit to build a single-family residence on the portion of the acre tract which contained no graves. The appellants also contend that the trial court committed reversible error by failing to address their contentions as to the validity of the tax sale by the county. For the reasons that follow, we affirm.
Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] To prevail on a motion for summary judgment, the moving party must show that there is no genuine dispute as to a specific material fact and that this specific fact is enough, regardless of any other facts in the case, to entitle the moving party to judgment as a matter of law. When a defendant moves for summary judgment as to an element of the case for which the plaintiff, and not the defendant, will bear the burden of proof at trial, the defendant may show that he is entitled to summary judgment either by affirmatively disproving that element of the case or by pointing to an absence of evidence in the record by which the plaintiff might carry the burden to prove that element. And if the defendant does so, the plaintiff cannot rest on his pleadings, but rather must point to specific evidence giving rise to a triable issue. We review a grant or denial of *710 summary judgment de novo and construe the evidence in the light most favorable to the nonmovant.[3]
On February 20,1900, John S. Heard executed a deed in favor of about eight named individuals to a one-acre tract of land, for the purposes of a family burial ground and to be used for said purposes only. One of the individuals in whose favor the deed was executed was Carl Heard. Atax deed shows that on December 5,2006, the acre tract was sold at a sheriff’s sale for delinquent property taxes, the grantors being “Carl C. Heard, Jr. and Mary H. Ellis, (“Owners”) by and through . . . the Sheriff.” The tax deed was filed and recorded on January 10, 2007.
On December 21, 2007, “MARY H. ELLIS A.K.A. MARYANN ELLIS ELSNER” executed an “Affidavit of Descent,” stating that her sibling Carl C. Heard, Jr., had died intestate on June 15, 1992, had never married and had no children, and all of the debts of his estate had been fully paid. That same day, “MARY H. ELLIS A.K.A. MARY ANN ELLIS ELSNER, individually and as Sole Surviving Heir of CARL C. HEARD JR.” executed in favor of Henry Cline an “Assignment of Rights for Tax Parcel” regarding the acre tract. Further, “MARY H. ELLIS A.K.A. MARY ANN ELLIS ELSNER . . . INDIVIDUALLY AND AS THE SOLE SURVIVING HEIR OF CARL C. HEARD, JR. DECEASED” executed a quitclaim deed, conveying the acre tract to Cline “for and in consideration of the sum of TEN ÁND 00/100 ($10.00) Dollars and other good and valuable consideration.” The appellants assert that Mary H. Ellis executed the quitclaim deed for the acre tract in favor of Cline in exchange for $10,000; Mills does not dispute this assertion. The three documents — affidavit of descent, assignment of rights, and quitclaim deed — were all filed and recorded on December 27, 2007.
Cline paid the redemption price to the entity that had purchased the property in the tax sale, and that entity (on December 27, 2007) “in turn issued a quitclaim deed in favor of Carl C. Heard, Jr. and Mary H. Ellis, who had already quitclaimed their purported interest in the Property to Mr. Cline.” On July 31, 2012, Cline conveyed the property by quitclaim deed to his daughter and her husband, Christopher Mills, “for and in consideration of the sum of ONE AND NO/100 U.S. Dollars ($1.00).”
In December 2011, Mills and his wife initiated communication with the City about building a single-family residence on the “raw *711 land” portion of the property or, in other words, that portion of the acre tract upon which there were no graves. It is undisputed that 20 or more human graves were situated on the property, “neatly arranged in clusters and rows,” that the graves covered approximately 0.20 acres of the northwestern portion of the acre tract, and that the most recent human burial identifiable on the tract had occurred in 1971. The City declined to issue Mills a residential single-family building permit, on the basis that the acre lot was encumbered by a “cemetery use restriction,” and would not be permitted for any other use. In August 2012, Mills filed a complaint for declaratory judgment, naming the City as the defendant, and asserting that, for various reasons, the restriction on the use of the entire acre tract as a family burial ground was no longer enforceable or, alternatively, that the City had “effectuated a taking of the Property by enforcing an unenforceable restriction covenant, . . . entitling Mills to just compensation.”
The City filed an answer, denying therein the “existence of a cause of action for which [Mills] would have redress before Court to seek a declaratory judgment.” On November 9, 2012, twenty-eight purported descendants of John S. Heard and of one of the individuals (not Carl Heard) named in the 1900 deed filed a motion to intervene as defendants in the case; they also filed an answer and counterclaim to Mills’s complaint. Mills consented to the motion to intervene. In their answer and counterclaim, the purported descendants asked the trial court to, among other things: (1) issue a declaratory judgment, “finding that the Cemetery is a family burial ground that has not been abandoned and, as such, [Mills] is prohibited from disturbing it in any fashion”; and (2) issue a declaratory judgment, “finding that legal ownership of the Cemetery is vested in the descendants of the individuals named in the original 1900 Deed from [John S.] Heard to his heirs.”
On February 27, 2013, the City and the purported descendants filed a document entitled “Defendants’ Notice of Joint Motion for Summary Judgment and Declaratory Relief,” asking the trial court to grant summary judgment in their favor regarding Mills’s complaint “on the ground that the Heard Family Cemetery has been perpetually dedicated as a private burial ground and, therefore, [Mills] cannot appropriate it for any other purpose, including constructing a single family residence.” The City and the purported descendants “[additionally” sought a “declaratory judgment that legal title to Heard Family Cemetery rests in the hands of . . . John Heard’s heirs as descended through the individuals named in the February 20, 1900 deed, which perpetually established Heard Family Cemetery as a private burial ground”; the appellants challenged the validity of the tax sale and deed.
*712 The trial court denied the motion for summary judgment, concluding that while “alleged descendants of a prior owner of the Property” had an “easement in the Cemetery Limits,”
[t]here exist material issues of fact as to what portion of the Property has been or might be used for burial purposes. Similarly, the record reflects that the undeveloped portion of the Property contains mature tree growth and at some point in time may have been physically separated from the cemetery proper by a fence.
The court did not address the appellants’ motion for declaratory judgment with regard to the validity of the tax sale and deed, and who held legal title in the cemetery.
1. The City and the purported descendants contend that the trial court erred by holding that material issues of fact exist regarding whether “portions of the Heard Cemetery have been abandoned.”[4]
When a family burial plot is established, it creates an easement against the fee, and while the naked legal title will pass, it passes subject to the easement created. . . . The easement and rights created thereunder survive until the plot is abandoned either by the person establishing the plot or his heirs, or by removal of the bodies by the person granted statutory authority.[5]
“Abandoned cemetery” means a cemetery which shows signs of neglect including, without limitation, the unchecked growth of vegetation, repeated and unchecked acts of vandalism, or the disintegration of grave markers or boundaries and for which no person can be found who is legally responsible and financially capable of the upkeep of such cemetery.[6]
Although Arlington Cemetery Corp. v. Bindig[7] involved the dedication of land for a public cemetery,[8] and what is involved in this case is the dedication or intended restriction on the use of private property *713 for family burial purposes, as regards the issue of abandonment, the Supreme Court of Georgia in Arlington stated that “[abandonment is largely a question of intent. This intent is inferable from the acts of the parties, interpreted in the light of all the surroundings [.] . . . Abandonment is a mixed question of law and fact.”[9]
In moving for summary judgment (and on appeal) the appellants posited that “there is no set of facts under which [Mills] could prove that [JohnS. Heard’s] descendants have abandoned their interests in the Cemetery.” The appellants pointed to evidence showing that the grave sites, collectively, are recognized by the Sandy Springs community as the Heard Family Cemetery, or burial ground; there are multiple headstones that can be easily seen from Heards Drive; various neighborhood groups and individual neighbors have cleaned up the cemetery and paid for tree removal services over the years; and 28 descendants of John S. Heard have intervened in “this action to protect their interests in the Cemetery.”
Mills responded by pointing to evidence (or the absence thereof) in the record showing that in May 2012, an archeologist determined that no human burial had taken place in the cemetery since 1971; none of the alleged descendants stated that they had maintained the cemetery or did anything to expand the cemetery into the undeveloped 0.80 acre portion of the acre tract; and none of the descendants had paid the ad valorem taxes that had been assessed on the property, redeemed the property after the tax sale, or “even challenged the [tax] levy.” None of the descendants had averred in their affidavits that they were legally responsible and financially capable of the upkeep of such cemetery. The trial court found (and the evidence showed), inter alia, that Cline maintained the property after he purchased it in the tax sale, the undeveloped portion of the acre tract contained mature trees, and there were “remnants” of a fence that appeared to have enclosed the cemetery.
There was evidence that the descendants had abandoned the acre tract of land that had been conveyed for the purposes of a family burial ground, and Mills met his burden on summary judgment by pointing to specific evidence giving rise to a triable issue of fact.[10] *714 Accordingly, the trial court did not err by denying the appellants’ motion for summary judgment as to Mills’s complaint for declaratory judgment.
2. The appellants also contend that the trial court committed reversible error by “failing to address their contentions that the sale of the cemetery to Mills is void because cemeteries in Georgia are exempt from ad valorem taxes.”
In their answer and counterclaim, the purported descendants alleged that their right to the acre tract was “threatened by a series of land transfers that are void,” and they asked the trial court to “issue a Declaratory Judgment finding that legal ownership of the Cemetery is vested in the descendants of the individuals named in the original 1900 Deed from [John S.] Heard to his heirs.” In their motion for summary judgment and declaratory judgment, the City asserted, and the purported descendants continued to assert, that the trial court “should declare that legal title to the cemetery rests in the possession of the heirs of the individuals named in the original deed,” and in support thereof they argued that “the tax deed executed by Fulton County . . . should be declared void because the deed did not convey the cemetery and, even if it did, cemeteries are exempt from property taxes in the State of Georgia.”
“It is the duty of a litigant to obtain a ruling on his motions or objections.”[11] There is no indication in the appellate record that the appellants made any effort to elicit a ruling from the trial court with regard to their motion for declaratory judgment concerning the validity of the tax sale and deed, and who held legal title in the property. The record shows that seven days after the trial court entered the order from which the appellants appeal, the appellants filed in the trial court a request for a certificate of immediate review. In their request, the appellants made no mention of their motion for declaratory judgment, referring solely to their “Joint Motion for Summary Judgment” and the trial court’s ruling thereon with regard to the issue of whether the acre tract of land, or any part thereof, had been abandoned. The appellants’ failure to obtain a ruling on their joint motion for a declaratory judgment (concerning the validity of the *715 tax sale and deed, and legal ownership or title of the acre tract) resulted in a waiver of review of that issue in this appeal.[12]

Judgment affirmed.

Ellington, P. J., concurs. McMillian, J., concurs specially.

 This court granted the appellants’ application for interlocutory appeal.

 OCGA § 9-11-56 (c).

 Maree v. ROMAR Joint Venture, 329 Ga. App. 282, 283 (763 SE2d 899) (2014) (citations omitted).

 It is apparent by the appellants’ appellate brief that by “Cemetery,” they mean the entire acre tract of land which was deeded for the specified purpose of serving as a burial ground.

 Walker v. Ga. Power Co., 177 Ga. App. 493, 495 (1) (339 SE2d 728) (1986) (citations, punctuation and emphasis omitted).

 OCGA § 36-72-2 (1).

 212 Ga. 698 (95 SE2d 378) (1956).

 Id. at 703-704 (2).

 Id. at 704 (2) (citations and punctuation omitted).

 See OCGA §§ 36-72-2 (1); 9-4-6 (providing for the submission of fact issues to the jury in declaratory judgment actions). See generally Walker, supra at 497-498 (1) (heir abandoned her rights in a private cemetery when she acquiesced in the removal and reinterment of the remains of her ancestors in relocated cemetery; therefore, trial court erred in not granting condemnor’s motion for summary judgment regarding heir’s claim of inadequate compensation for relocation of cemetery).

 Shropshire v. Alostar Bank of Commerce, 314 Ga. App. 310, 313 (2) (a) (724 SE2d 33) (2012) (punctuation and footnote omitted); see Tipton v. State of Ga., 321 Ga. App. 870, 872 (1) (743 SE2d 532) (2013); American Mgmt. Svcs. East v. Fort Benning Family Communities, 318 Ga. App. 827, 830, n. 3 (734 SE2d 833) (2012); Ware v. Fidelity Acceptance Corp., 225 Ga. App. 41, 42 (1) (482 SE2d 536) (1997). Compare Walker, supra at 497 (1) (“The superior court... erred in refusing to consider... questions, which were properly raised... in [a] motion for summary judgment.”).

 Shropshire, supra; American Mgmt. Svcs. East, supra; Peace v. Dominy Holdings, 251 Ga. App. 654, 657 (2) (554 SE2d 314) (2001).